(No. 32901.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARY MURAWSKI, Plaintiff in Error.

*Opinion filed January 20, 1954.*

ALEX J. VICTOR, and JOHN S. GHENT, both of Rockford, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and ROBERT R. CANFIELD, State's Attorney, of Rockford, (H. EMMETT FORGATE, FRED G. LEACH, and ROBERT L. BURNS, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiff in error, whom we shall refer to as defendant, was indicted by a special grand jury at the October, 1952, term of the circuit court of Winnebago County. The indictment containing six counts variously charged the defendant with murder by abortion, abortion and attempted abortion by divers means and devices. A motion to quash the indictment was overruled, likewise a challenge to the array of jurors was denied, and on trial the jury returned a verdict finding the defendant guilty of the count charging abortion. Following a denial of a motion for new trial and in arrest of judgment, the defendant was given an indeterminate sentence of not less than five and not more than ten years in the Illinois penitentiary. The defendant comes here by writ of error to have that judgment reviewed.

The proof upon which the prosecution relies to sustain this conviction is practically uncontradicted. Mary Murawski was an elderly lady in her 75th year, of German

ancestry and was able to read and write English but meagerly. Although unlicensed, she had been a midwife for many years. Early in November, 1952, the defendant was visited by the mother of Isabella Cuda and was reminded of their friendly relationship when they lived in the same apartment building several years ago. Mrs. Castronovo, on that occasion, told the defendant that her daughter was pregnant; that she was now separated from her no-good husband and would receive no support from him for the expected child; that he had never supported the child which they have and appealed to the defendant to perform an abortion. The defendant told her.that she was busy, but that she would take care of her on the following day. The defendant agreed to perform the service, for which she was paid $50. On the following day Isabella Cuda went to defendant's home in Rockford, Illinois. There a hard rubber tube was inserted into the vagina and uterus of Isabella and she was instructed by the defendant to allow it to remain there until the following day. On the next day the defendant went to the home of Isabella Cuda and her mother where she removed the tube and administered a douche. As a result of the foregoing Isabella Cuda developed an infection which caused her death ten days later in the Swedish Memorial Hospital in Rockford.

Two policewomen of the Rockford police department questioned the defendant and prepared a statement in writing which was read to the defendant and signed by her as her free and voluntary act. An assistant State's Attorney interrogated the defendant, and a stenographic transcript of that interview was admitted into evidence. The signed statement and the transcribed interview, containing admissions of all the necessary ingredients of the crime charged, were received in evidence.

Dr. Paul A. VanPernis, a skilled pathologist, testified that immediately following the death of Isabella Cuda, he performed an autopsy and found that she had been preg-

nant; that an abortion had been performed; that there was no reason why such abortion was necessary for the preservation of life; and that the deceased died from an infection caused by the abortion.

Vincent B. Castronovo, Jr., a brother of deceased and an officer in the United States Air Force, testified that he was called to the bedside of his sick sister, Isabella Cuda, during the last three days of her illness; that a priest had been called to administer the last sacraments; that she was in constant pain and breathing with great difficulty; that during this period when death seemed imminent, she told him that Mary Murawski had performed an abortion on her. After preliminary proof, this testimony was ruled admissible as a dying declaration. Mary Murawski did not testify. Her daughter, Irene Manoli, was the sole defense witness and her testimony was in noway helpful to her mother in her defense. The record, therefore, clearly indicates the defendant's guilt.

We shall briefly consider the several errors relied upon by the defendant's counsel in seeking a reversal of the judgment entered. It is claimed by the defendant that there was no competent proof of pregnancy—independent of the extrajudicial confessions signed by the defendant. A careful reading of the testimony of Dr. Paul A. Van Pernis causes us to reject such a contention. He testified that he was a pathologist and was called to perform an autopsy on the body of Isabella Cuda on November 12, 1952; that his findings were that Mrs. Cuda had recently been pregnant; that there were external and internal evidences of such pregnancy; that the womb had recently been emptied and that it had been infected; that this infection had damaged the kidneys and liver and thus produced death. It was his opinion that death was caused by an infection in the womb and that this woman had been pregnant previous to the infection in the womb.

It is strongly urged by counsel for defendant that the trial court grievously erred in unduly restricting his examination of the jury on their *voir dire*. This question was propounded to one of the jurors, "Are you of the opinion that an abortion should never be performed?" The trial court should have permitted this inquiry. It is within the province of a trial attorney to make any reasonable and pertinent search to ascertain whether the minds of prospective jurors are free from bias and prejudice, so that he may more wisely exercise the right of peremptory challenge. Abortion with all its involvements is a particularly fertile field for preconceived notions and prejudices. In view of the fact that the jury exhibited considerable leniency in finding the defendant guilty of the lesser offense and not guilty on the counts charging murder by abortion, we are sure that this error did not operate adversely to defendant's interest.

Lastly, we have given consideration to the contention of defendant that the trial court erred in his ruling that the testimony of Vincent B. Castronovo met all the requirements for the admissibility of dying declarations. Applying all the tests that this court so completely delineated in *People* v. *Tilley*, 406 Ill. 398, we are of the opinion that the trial court's conclusion found ample support in the evidence. In this connection, it is suggested that since defendant was found guilty on the count of the indictment charging abortion and since the death of the declarant is not the subject of that charge, dying declarations were inadmissible.

It is the general rule throughout all jurisdictions that to render dying declarations admissible in evidence they must have been made by the victim in a case of homicide where the death of a declarant is the subject of the charge and where the circumstances of the death constitute the subject of the declarations. *People* v. *Cox*, 340 Ill. 111;

*Simons* v. *People,* 150 Ill. 66; *North* v. *People,* 139 Ill. 81; *Scott* v. *People,* 63 Ill. 508; 26 Am. Jur. "Homicide," sec. 388, p. 427; 49 A.L.R. 1285; 91 A.L.R. 561.

However, in the indictment before us the defendant was charged with murder by abortion under section 3 of division I of the Criminal Code. (Ill. Rev. Stat. 1953, chap. 38, par. 3; Jones Ann. Stat. 37.015.) Death, therefore, is the subject of that charge, thus rendering dying declarations relating to the circumstances of the death admissible. The defendant could have caused the jury to be instructed that such testimony related only to the count of the indictment charging murder and should not be considered in connection with the charge of abortion or attempted abortion. A failure on the part of the court to volunteer such an instruction, however, is not error.

The record in this case demonstrates very clearly the guilt of the defendant. She was fairly and competently tried. Whatever errors intervened were not of a serious character and would not justify a reversal.

*Judgment affirmed.*