(No. 88007.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TERRANCE STRAIN, Appellee.

*Opinion filed November 16, 2000.—Rehearing denied January 29, 2001.*

MILLER, J., dissenting.
HEIPLE, J., joined by BILANDIC, J., also dissenting.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Jean T. McGuire, Kenneth T. McCurry and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Christopher W. Buckley, Assistant Appellate Defender, of the Of-

fice of the State Appellate Defender, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

A jury convicted defendant, Terrance Strain, of two counts of first degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1992)) in connection with the death of Geary Dow. Subsequently, the trial court sentenced defendant to concurrent prison terms of 45 years for each count of first degree murder. The appellate court reversed defendant's conviction and remanded for a new trial because it found that the trial court committed error in refusing to ask the jury venire two questions submitted by defendant. 306 Ill. App. 3d 328. We allowed the State's petition for leave to appeal (177 Ill. 2d R. 315(a)), and now affirm.

## BACKGROUND

On February 12, 1996, Dow was killed as he stood outside a home on the 120th block of Perry Avenue in Chicago. Dow had gone to the home, along with Terry Bosley, to perform some electrical work. He was shot as he and Bosley waited next to a van for the daughter of the homeowner to give them a ride home.

A few days after the shooting, defendant learned that the police wanted to question him about a homicide. On February 20, 1996, police officer Jerry paged defendant. Defendant responded to the page and suggested a meeting at a gas station in Riverdale. Defendant had acted as a confidential informant for Officer Jerry since 1995. When the police car arrived at the gas station, defendant flagged the car down and got in the car. Officer Jerry took defendant to the police station, where he was placed under arrest.

The State claimed that defendant gave an oral statement while under arrest. Defendant denied making any

statement. After a hearing on a motion to suppress, the trial court decided to allow the State to introduce the alleged statement into evidence at trial. The statement contained numerous references to gangs.

The State then moved to allow proof of other crimes at trial. In its motion, the State alleged that members of the Gangster Disciples shot defendant in the leg because defendant was a member of the Black Disciples. In retaliation, defendant attempted to shoot Darryl Burnett, a member of the Gangster Disciples, near the intersection of 120th Street and Perry Avenue. The State argued that defendant's action in killing Geary Dow was yet another attempt to retaliate against the Gangster Disciples. The trial court granted the State's motion, ruling that the evidence of other crimes was admissible to show defendant's state of mind, intent and motive, and relevant to identification.

The trial court recognized that evidence of gang affiliation was to play a part in defendant's trial. Prior to the start of *voir dire*, the trial judge indicated to the attorneys that he would advise prospective members of the jury there would be evidence of gang involvement at trial. The trial judge noted that he would ask the prospective jurors questions relating to:

> "The allegation they or any close member of their family or close friend had any involvement with a gang, could be membership, affiliation, could be a victimization and so the parties then would be fully aware of anything like that."

The trial judge also indicated that, pursuant to Supreme Court Rule 431 (177 Ill. 2d R. 431), he would allow supplemental questioning of the prospective jurors, upon the court's approval of the questions.

The trial judge conducted *voir dire* of the first panel of the venire, consisting of 20 prospective jurors. The trial judge asked each prospective juror whether the juror, any member of the juror's family or a close friend of the juror had ever been involved in a gang. The trial

judge also asked each prospective juror whether the juror could be fair to both sides. Defense counsel then requested that the trial judge ask each prospective juror whether the juror would find defendant less believable if the juror learned that defendant belonged to a gang. This colloquy followed:

"THE COURT: Whom am I supposed to ask that [to]?

MR. STRALKA: Everybody, I know you mentioned you would ask about gangs but the question is have you had any contact with gangs.

THE COURT: Why wasn't this submitted prior to me doing the jury questioning?

MR. STRALKA: I thought you said when you asked about gangs, you would get into it.

THE COURT: I gave specifically what question I would ask and typically the question I have asked.

MR. STRALKA: This is my request for a supplemental question.

THE COURT: That's not supplemental. This is new, a new, separately new question which would require the Court [to] go back and ask each individual juror a question that could have been submitted previously on that.

MR. STRALKA: If the Court would allow me to ask it, I'll ask it.

THE COURT: It's not supplemental.

MR. STRALKA: It's supplemental to the issue of gangs.

THE COURT: To the issue but not the question. I indicated the question to you previously, and you at that point even though it was tardy and not in writing, I would have allowed you to submit this at this time and I would have asked this in tandem with the question if it was submitted but it's not submitted, it's not supplemental, it's different.

Next is if you learned the defendant is and was a member of a gang would it make it more likely than not that he's guilty of a gang shooting.

You see that's the reason why you can't add these at the 11th hour like this, because obviously—.

MR. STRALKA: I'm asking that either the Court or I be allowed to ask this as a question, follow up question on the issue of gangs.

THE COURT: Nobody has indicated that they have been involved in a gang at all, none has answered that yet. And again this is the kind of question that the State is entitled to respond to and object to and to be heard on and bring authority on and not be ambushed by it at the 11th hour.

MR. STRALKA: The issue here is how does it affect the juror? They could answer to this Court that they have had no knowledge, no contact with gangs as all, but one juror has indicated. But the question would be do you have an opinion of gangs, would that opinion of gangs if you learned the defendant is in a gang would that affect your ability to be fair. That's what these questions go to and probe. A fairness question.

THE COURT: Then why didn't you submit them earlier? Now as a matter of trial strategy you're springing them on the Court and on your adversary.

MR. STRALKA: The rules suggest that supplemental questions be submitted after the Court asks questions.

THE COURT: These are not supplemental, these are brand new questions that the Court is entitled to notice and to make a fair intelligent ruling on as the opposition is entitled to very notice and make a credible and well researched objection on it. This is, both these will not be allowed."

The trial judge recalled the first venire panel and asked one prospective juror supplemental questions regarding the circumstances surrounding the murder of a relative. The trial judge also asked the prospective juror, as well as three other members of the panel, supplemental questions regarding the districts to which their police officer relatives and acquaintances were assigned. The trial judge then continued *voir dire* with the examination of a second venire panel. As with the members of the first venire panel, the trial court asked each prospective juror whether the venireperson, any member of the venireperson's family or a close friend of the venireperson had ever been involved in a gang. The trial judge also asked each prospective juror whether he or she could be fair to both sides. Although defense

counsel renewed his request to have the prospective jurors questioned regarding gang bias, the trial judge refused to do so.

Defendant's trial proceeded with the presentation of the State's opening statement. In its statement, the State explained to the jury that defendant held a grudge against the Gangster Disciples because defendant believed that members of the Gangster Disciples had shot him in the leg on January 29, 1996. The State then recounted defendant's attempts to extract revenge from the Gangster Disciples, culminating in the murder of Dow. The State concluded that Dow was an innocent victim, killed because he "walk[ed] straight into a collision course [with defendant's] wrath. He walked into a bullet fired by [defendant, a] member of the Black Disciple street gang[, at] people who this defendant thought were G.Ds., Gangster Disciples, rival gang members."

At trial, the State introduced defendant's alleged oral statement into evidence, and presented the testimony of several police officers and members of the Gangster Disciples, to support its theory that defendant shot and killed Dow in an attempt, gone awry, to extract revenge from the Gangster Disciples. The opinion of the appellate court contains a thorough exposition of this evidence, including a summary of defendant's alleged oral statement, and his testimony denying that he made the statement. See 306 Ill. App. 3d 328. We need not repeat the facts here. However, for purposes of this appeal, we note two matters of crucial importance: (1) gang information permeated the testimony of almost every witness at trial; and (2) the outcome of the trial turned upon the credibility of defendant, various police officers, and members of the Gangster Disciples.

## DISCUSSION

As indicated above, the appellate court found that

the trial court committed error in refusing the questions submitted by defendant, probing for gang bias. Initially, the State maintains that defendant waived objection to the *voir dire* because defendant submitted the questions in an untimely manner. The State notes that defendant had an opportunity to submit questions to the trial court prior to *voir dire* but failed to do so. We reject the State's contention. Instead, we agree with defendant that the questions he submitted on the subject of gang bias were supplemental questions, which he could not have known the need for or, indeed, could not have formulated until the trial court posed the initial question on gang involvement.

The trial judge indicated to the attorneys at bar that he would question the prospective jurors on the subject of gangs, and gave examples of areas, such as affiliation and victimization, that would be covered in questioning. The trial judge noted that "the parties then would be fully aware of anything like that." However, the trial judge posed only one question to the prospective jurors, inquiring regarding each prospective juror's involvement in a gang.

Once the trial judge concluded his examination of the first venire panel, he conferred with the attorneys regarding supplemental questions. Defense counsel then submitted the questions on gang bias. Defense counsel argued forcefully that the trial judge's question regarding gang involvement would not reveal biases against gang members. A juror might well answer a question regarding gang involvement in the negative, while harboring an opinion of gang members that would affect his ability to weigh the evidence fairly and impartially. Realistically, the conference was defense counsel's first opportunity to submit the questions at issue. Even more importantly, it was not until the trial judge posed the question regarding gang involvement that defense

counsel became aware of the scope of the court's examination and perceived the deficiencies in the questioning. In general a party does not waive an issue if raised at the first opportunity. See *People v. Janes*, 168 Ill. 2d 382, 387 (1995); *People v. Karas*, 81 Ill. App. 3d 990, 996 (1980); *People v. Knutson*, 17 Ill. App. 2d 251, 259 (1958).

We note that the trial judge recalled the first venire panel and asked members of the panel supplemental questions relating to other matters. It would have taken little additional time for the trial judge to ask the prospective jurors the supplemental questions on gang bias.

Next, the State maintains that defendant was not entitled to question the venire regarding gang bias and, thus, the trial court did not abuse its discretion in refusing the questions submitted by defendant. Again, we disagree.

Section 13 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 13) guarantees an accused the "right of trial by jury as heretofore enjoyed." This court has previously construed these words to mean the right of a trial by jury as it existed under the common law, that is "the right to have the facts in controversy determined, under the direction and superintendence of a judge, by the unanimous verdict of twelve impartial jurors who possess the qualifications and are selected in the manner prescribed by law." *People v. Lobb*, 17 Ill. 2d 287, 298 (1959) (interpreting predecessor provision in 1870 Constitution). Section 13 complements the right to a speedy public trial by an impartial jury afforded to an accused pursuant to section 8 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 8).

Consistent with constitutional safeguards, this court has the inherent power to make rules governing the practice in the circuit courts, including the regulation of jury trials in criminal cases. *Lobb*, 17 Ill. 2d at 299. Accordingly, this court has adopted Rule 431, regulating

*voir dire* examination of prospective jurors. The rule provides in part:

"The court shall conduct *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges. Questions shall not directly or indirectly concern matters of law or instructions." 177 Ill. 2d R. 431.

Thus, the trial court is given the primary responsibility of conducting the *voir dire* examination, and the extent and scope of the examination rests within its discretion. *People v. Terrell*, 185 Ill. 2d 467, 484 (1998); *People v. Williams*, 164 Ill. 2d 1, 16 (1994); *Lobb*, 17 Ill. 2d at 300. However, the trial court must exercise its discretion in a manner consistent with the purpose of *voir dire*. *Terrell*, 185 Ill. 2d at 484; *People v. Hope*, 168 Ill. 2d 1, 30 (1995). As the court observed in *People v. Cloutier*, 156 Ill. 2d 483, 495-96 (1993), "[t]he purpose of *voir dire* is to ascertain sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath." See also *Hope*, 168 Ill. 2d at 30; *People v. Howard*, 147 Ill. 2d 103, 133 (1991). The jurors must harbor no bias or prejudice which would prevent them from returning a verdict according to the law and evidence. *Lobb*, 17 Ill. 2d at 300. Thus, "a failure to permit pertinent inquiries to enable a party to ascertain whether the minds of the jurors are free from bias or prejudice which would constitute a basis of challenge for cause, or which would enable him to exercise his right of peremptory challenge intelligently, may con-

stitute reversible error." *Lobb*, 17 Ill. 2d at 300; see also *People v. Porter*, 111 Ill. 2d 386, 401 (1986).

This court has previously recognized that street gangs are regarded with considerable disfavor by other segments of our society. *People v. Gonzalez*, 142 Ill. 2d 481, 489 (1991). Moreover, this court has acknowledged, as has our appellate court, that, particularly in metropolitan areas, there may be strong prejudice against street gangs. *People v. Patterson*, 154 Ill. 2d 414, 458 (1992); *People v. Smith*, 141 Ill. 2d 40, 58 (1990); *People v. Pogue*, 312 Ill. App. 3d 719, 727 (1999); *People v. Jimenez*, 284 Ill. App. 3d 908, 912 (1996); *People v. Martin*, 271 Ill. App. 3d 346, 355 (1995). Accordingly, this court has held that evidence indicating a defendant is a member of a gang or is involved in gang-related activity is admissible only where there is sufficient proof that membership or activity in the gang is related to the crime charged. *Patterson*, 154 Ill. 2d at 458; *Smith*, 141 Ill. 2d at 58. The same concerns regarding the prejudicial effect of gang evidence dictate our holding that, when testimony regarding gang membership and gang-related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias. See *Terrell*, 185 Ill. 2d at 485 (discussing the circumstances and fairness concerns involved in *Jimenez*, 284 Ill. App. 3d 908, a case where the defendant was convicted of murdering a man who opposed the defendant's gang activities); see also *People v. Murawski*, 2 Ill. 2d 143, 147 (1954) (trial court should have permitted *voir dire* inquiry on the subject of abortion since abortion is "a particularly fertile field for preconceived notions and prejudices").

In the case at bar, gang-related testimony was pervasive. Indeed, the first words of the State in closing argument referred to gangs:

" 'Let's get strapped. The GD's are coming.' With words to that effect, this defendant, Terrance Strain, set in motion the chain of events of February 12, 1996."

The State continued closing argument with numerous references to gangs:

"And you remember the background, the gang evidence, the things that happened even before we get to February 12. Let's talk about that for a minute. What do we now know? We now know that this whole thing is over gang nonsense. The gang crap that controls our streets these days. That is what this whole thing is about. And we now know that this guy is a life long member of the BD's [Black Disciple's]. We know he was a BD on February 12. He was a BD on February 6. He was a BD on February 9. And he was a BD on January 29. And for ten years prior to that, no matter what he wants you to believe about being citizen of the year and resurrected.

What else do we know? We know that there's territories. That these gangs are very, very well-organized in the City of Chicago. And they are particularly well-organized in the Roseland community.

How do we know that? We know that from every single source of evidence that you heard in this courtroom. We know that from the defendant himself. We know that from Dave Jarmusz. We know that from all the police officers, and we know that from James Burnet[t] and Darryl Burnet[t] who are also experts in the field of gang crimes.

And you heard about the different boundaries that exist with the gangs in the 120th and Perry area. And you know now what they knew then. What all of the gang knew. That Lafayette was controlled by Terrance Strain's gang. This area is the Land of Strain, the Land of the BD's. And this area is controlled by the GD's the gang that James Burnet[t] is a governor in.

And you also know that there was a rivalry going on. That there had been shootings back and forth over a period of at least a year. And you know that from every single source except for this guy [defendant], who wants you to believe there was no rivalry or he didn't know about it.

* * *

[Defendant is] going to get revenge. This is what gangs

do for a living, they get revenge. They spend all their time out there. They don't work. They don't go to school. They don't serve the community. They spend all their time plotting revenge and retaliation. You get shot, you got to shoot somebody. It's respect. It's your stature in the gang. You don't let it go by. ***

* * *

Well, this is [defendant's] favorite method of escape from there. This is how he always gets away. When you limp through that lot, where do you end up? You end up on Lafayette in the Land of Strain. That is where you end up. In BD Land where he is safe. That is what he does. He comes sneaking in. He creeps in. He does the creeping on February 6, the creeping he likes so much. Sneaks into this territory, shoots at Darryl and Jerome, and then leaves and goes back to his own territory."

Throughout its opening statement and closing argument, the State reminded the jurors of the importance of gang testimony at trial. The jury heard testimony from numerous police officers assigned to gang units, police detectives and gang members, all contending that a gang war was in effect between the Gangster Disciples and the Black Disciples; that Perry Avenue was the dividing line between the two gangs; and that defendant, intent on obtaining revenge against the Gangster Disciples, made forays into Perry Avenue in his capacity as a police informant, who gave information leading to the arrest of members of the Gangster Disciples, and as the shooter with the limp and the automatic weapon, who, eventually, shot Dow. Given this list of witnesses, the importance of gang testimony at trial, and the prejudice which may attach to such testimony, the trial court should have questioned the prospective jurors to determine whether they harbored any gang bias or prejudice.

In its opening brief on appeal, the State remarks: "Naturally, prospective jurors may find street gangs objectionable based upon their criminal conduct. A bias against street gangs is not morally reprehensible."

However, the State maintains that the trial court's questions sufficiently probed the venire members' potential to be biased against defendant. We disagree. As the appellate court commented: "the procedure employed to test juror impartiality in the case at bar would not have revealed prejudice against gang members since the prospective jurors were asked only whether they or any member of their families had ever had any involvement with street gangs." 306 Ill. App. 3d at 336. A prospective juror may have had no direct or indirect involvement with gangs, yet be biased against gang members or hold a negative opinion on the subject of gangs. Moreover, as the appellate court observed, "[a] question should not depend upon the prospective juror to volunteer information that does not fall within the question's scope." 306 Ill. App. 3d at 336.

The State notes that gang evidence was admitted at trial to show defendant's motive in killing Dow. The State argues that, since the prosecution is not required to prove motive in order to sustain a conviction for murder, the resolution of the trial did not rest on the jury's acceptance of the gang motive. This argument is unavailing. The State chose to place the gang testimony before the jurors, and to stress its importance from the first words in opening statement through closing argument. We cannot conclude that the jurors chose to ignore this evidence.

Next, the State maintains that the trial court did not abuse its discretion in refusing the questions at issue because the questions were directed to the evidence to be presented at trial. The State argues the questions were an attempt to pre-educate the jury with respect to evidence that defendant had quit the street gang. In our view, the proffered questions would not have informed the jury that defendant was no longer a member of a gang. Rather, defendant sought to expose juror predisposition toward, and bias against, gangs.

Lastly, the State notes the trial court instructed the jurors that evidence defendant had been involved in an offense and conduct other than that charged in the indictment was to be considered only with respect to the issue of defendant's identification, intent, and motive, and to show the absence of mistake. Given the clause in Rule 431 that "[q]uestions shall not directly or indirectly concern matters of law or instructions," the State maintains that the trial court did not abuse its discretion in refusing the questions submitted by defendant because the questions were the subject of the trial court's limiting instruction. Again, we must disagree. The limiting instruction the trial court gave the jury pertained to defendant's involvement in an offense and conduct other than that charged in the indictment, that is, the alleged attempt by defendant to shoot Darryl Burnett on February 6, 1996. The instruction does not cover the area of gang bias or prejudice. Thus, we conclude that the questions submitted by defendant did not directly or indirectly concern the trial court's instruction.

## CONCLUSION

The trial court was required to conduct *voir dire* in a manner to assure the selection of an impartial panel of jurors, free from bias and prejudice. Because of the trial court's refusal to probe for gang bias, defendant was denied an informed and intelligent basis on which to assert challenges for cause or to exercise peremptory challenges. We note that considerations of double jeopardy do not apply (*People v. Taylor*, 76 Ill. 2d 289, 309-10 (1979)). Consequently, we affirm the judgment of the appellate court reversing defendant's conviction and remanding for a new trial.

*Affirmed.*

JUSTICE MILLER, dissenting:
Unlike the majority, I believe that the trial judge in

the present case adequately questioned the members of the defendant's venire about their views regarding street gangs. At the outset of jury selection, the trial judge told the venire that evidence of gang membership would be introduced at trial. During the course of *voir dire*, the judge asked each prospective juror whether the person, a family member, or close friend had had any involvement with street gangs. Prospective jurors who answered affirmatively were questioned further about the matter and were asked whether that would affect their ability to be fair and impartial. No additional inquiry was necessary, and the trial judge did not abuse his discretion in refusing to ask the supplemental questions posed by defense counsel. As Justice Heiple points out in his dissent, juror attitudes toward street gangs do not fall within the subject areas—racial prejudice, and views on the death penalty—for which the United States Supreme Court has required a more particularized inquiry about possible bias. Moreover, this court has held that prospective jurors should not generally be questioned about the evidence to be introduced at trial. See *People v. Buss*, 187 Ill. 2d 144, 179-80 (1999); *People v. Howard*, 147 Ill. 2d 103, 135-36 (1991). I believe that the inquiry made by the trial judge in the case at bar was sufficient to ensure the selection of an impartial jury. For these reasons, I respectfully dissent.

JUSTICE HEIPLE, also dissenting:

The evidence at trial in this case showed that Geary Dow was killed when defendant, a member of the Black Disciples street gang, shot Dow repeatedly in attempted retaliation for a prior shooting by a rival gang. In affirming the appellate court's reversal of defendant's conviction, the majority here rules that the trial judge erred when he refused defendant's request to ask potential jurors two questions defendant had submitted regarding gangs.

The Illinois Constitution requires jurors to be impartial. Ill. Const. 1970, art. I, § 8. To this end, potential jurors are typically asked whether they have any relationship with or sympathy toward certain people, such as law enforcement officers or convicted criminals, which may affect the jurors' ability to be impartial. Because the evidence in this case indicated that the shooting was gang-related, the trial judge asked all potential jurors if they had any involvement with or exposure to gangs. Those who answered in the affirmative were questioned further as to the details of their involvement and whether they could nevertheless be impartial. For example, when one potential juror indicated that his brother had been attacked by gang members in high school, the judge asked, "If you learn during the course of the case the defendant is or was a member of a gang, would you hold that against him since your brother was beaten up by gang members?" The venire member responded in the negative.

Unsatisfied with the extent of the questioning, defendant requested that the judge also ask all potential jurors two additional questions:

> "1. If you learned the defendant is a member of a gang, would this make him less believable?
> 2. If you learned the defendant is and was a member of a gang would it make it more likely than not that he's guilty of a gang shooting?"

These two requested questions were not allowed by the trial judge. He ruled correctly. The jurors' reaction to gangs and gang membership had previously been adequately addressed.

This court has consistently held that potential jurors may not be asked about their anticipated responses to specific items of evidence. *People v. Buss*, 187 Ill. 2d 144, 179-80 (1999). Allowing an attorney to survey the reaction of potential jurors to specific items of evidence facilitates the seating of a partial rather than an impartial jury.

Furthermore, the majority's *per se* rule sets a troubling precedent. As a result of today's decision, other litigants will now demand that jurors be questioned about an endless list of potential biases and asked to explain their reactions. Under the majority's revolutionary rule, a defendant becomes entitled to question potential jurors on a particular subject merely by showing that (1) evidence concerning the subject will play a major role in the trial; and (2) "segments of our society" regard the subject with "considerable disfavor." 194 Ill. 2d at 477.

While this court is entirely free to interpret the Illinois Constitution and United States Constitution differently, the United States Supreme Court has wisely read the federal document to require particularized questioning concerning bias in only two subject areas: (1) racial bias; and (2) attitudes toward the death penalty in capital cases. *Ham v. South Carolina*, 409 U.S. 524, 35 L. Ed. 2d 46, 93 S. Ct. 848 (1973); *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968). Unlike these well-settled areas, questions concerning a potential juror's attitudes toward gangs are unnecessary and may even be counterproductive. Although unacknowledged by the majority, the primary decision upon which the appellate court in the instant case relied has now been overturned by the *en banc* United States Court of Appeals for the Seventh Circuit. *Gardner v. Barnett*, 199 F.3d 915 (7th Cir. 1999). In reversing the decision of a three-judge panel which had required gang bias questioning similar to that sought in the instant case, the *en banc* court wrote:

"The subject matter of gangs and the unlawful activities their members engage in is delicate and long inquiries can be more detrimental to a fair trial than serve to expose an unwarranted prejudice. Not only does it invite a trip through a mine field it can actually serve to educate some persons whose understanding of gangs is limited, and cre-

ate prejudice where none existed before." *Gardner*, 199 F.3d at 921.

Finally, the nature and extent of venire questioning on such issues is decidedly best left to the discretion of the trial court. The judge in this case did an admirable job of balancing the need for inquiry into jurors' own exposure to gangs against the need to prevent corruption of the jury by premature exposure to evidence. The trial judge should be affirmed and the conviction and sentence reinstated.

For the reasons given, I respectfully dissent.

JUSTICE BILANDIC joins in this dissent.