THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLINTON HAGGARD, Defendant-Appellant.

First District (2nd Division)    No. 1—00—0048

Opinion filed June 18, 2002.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Barbara L. Jones, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

A jury convicted defendant of first degree murder and two counts of attempted murder. He was sentenced to concurrent sentences of 30 years for murder and two 20-year terms for each attempted murder conviction. Defendant appeals. We affirm.

Defendant argues on appeal that the trial court erred in: (1) sustaining the State's reverse motion under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), during jury selection; and (2) failing to dismiss a juror who said he would not follow the court's instructions.

Blondella Mitchell was killed on March 28, 1997, when she was shot while sitting on the porch of her home. Witnesses identified defendant as the shooter. Defendant admitted selling heroin on March 28, 1997, but denied involvement in the shooting. Defendant was later convicted of first degree murder and attempted murder and sentenced.

Defendant used five peremptory challenges against white jurors during jury selection. The State made a reverse *Batson* challenge as to all five. The trial court then asked defense counsel for race-neutral reasons to support the exclusions. The court accepted the tendered reasons as to all but one of the jurors, Irene Brizgys. The trial court found that the reasons for challenging Brizgys were pretextual. The trial court then reinstated Brizgys. Defendant now contends that the trial court improperly found a racial motivation behind the attempted exclusion and that her reinstatement as a juror denied defendant his right to a trial by an impartial jury.

■ *Batson* requires a *prima facie* showing that the use of peremptory challenges is racially motivated. The burden then shifts to the respondent to give a race-neutral explanation for excluding a juror. The trial court then determines whether the exclusions resulted from purposeful discrimination. *Batson*, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89, 106 S. Ct. at 1723-24. Where, as here, the trial court omits the first step and asks for race-neutral reasons, the issue of a *prima facie* showing is moot. *Hernandez v. New York*, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866 (1991). The trial court's finding on this issue is one of fact and turns on questions of credibility. We will not reverse absent clear error. *People v. Munson*, 171 Ill. 2d 158, 175, 662 N.E.2d 1265 (1996).

■ *Batson* requires proof of purposeful discrimination. *Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Courts look to the facial validity of the offered explanation. *Munson*, 171 Ill. 2d at 174. A race-neutral explanation is based on something other than the race of the juror. *Munson*, 171 Ill. 2d at 174. The reason offered will be deemed race neutral, absent an inherent discriminatory intent. *Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866.

■ Defendant offered two reasons to exclude Brizgys: (1) earlier service on a civil jury and (2) work as a hospital technician, which made interaction with police more likely. The court did not comment on Brizgys' earlier service on a civil jury but declined to excuse the juror based on her employment. Defendant claims that the trial court's refusal to accept Brizgys' employment history as race neutral is manifestly erroneous because the court's ruling is based on a factual error and overlooks that concern with a juror's employment is a valid race-neutral reason. The trial court did not comment on Brizgys' earlier jury service. Defendant did not seek a ruling on this reason. The issue is not raised in this appeal and need not be addressed.

We agree that a juror's employment may be a valid race-neutral reason. But the trial court's finding that concern about Brizgys' employment was pretextual is supported by the record. The record shows that defendant suggested that Brizgys' employment, coupled with her statement during *voir dire* that police testimony would affect her ability to be fair, made her an undesirable juror. The record shows that Brizgys did not state she could not fairly evaluate police testimony as defendant claims:

> "THE COURT: And if policemen testify, would that affect your ability to be fair?
> JUROR: Yes.
> THE COURT: It would affect?
> JUROR: No.

THE COURT: It wouldn't?
JUROR: Know [*sic*]
THE COURT: It would not affect?
JUROR: No.
THE COURT: Would you be able to evaluate their testimony just like any other witness?
JUROR: Right."

This exchange supports a conclusion that defendant did not establish a bias in favor of police testimony.

There also was no factual error as defendant based his decision to attempt to exclude Brizgys in part on contact with the police. The trial court rejected this reason, saying that it did not recall Brizgys saying she worked with the police. The record supports the trial court's recollection. Brizgys was never asked if her work as a hospital technician involved police contact.

■ Defendant also claims that the trial court overlooked a valid supplemental reason offered for Brizgys' exclusion: that another juror with a similar background had already been accepted. Defendant then expressed concern that two jurors with medical backgrounds could negatively impact deliberations. The court dismissed this supplemental reason as "something different from what was originally put up." The record supports the trial court's decision.

Defendant did not express a concern about two jurors with medical backgrounds until the court rejected the rationale for dismissing Brizgys. Defendant's objection, until then, was limited to concern about Brizgys' ability to fairly evaluate police testimony because her employment placed her in regular contact with police. Defendant's attempt to interject jury composition issues only after the trial court said it was inclined to grant the State's motion underscores our conclusion that defendant's use of a peremptory challenge to exclude Brizgys was racially motivated. The *Batson* motion had been resolved against him by the time defendant presented his supplemental theory. There was no error. *Munson*, 171 Ill. 2d at 175.

■ Defendant next complains that his right to a trial by an impartial jury was also compromised when the trial court failed to dismiss a juror who said during *voir dire* he would not follow the court's instructions. Defendant concedes that this issue is waived and asks that the issue be reviewed for plain error. The error, if any, is far from plain, but we address it to illustrate the importance of reading a trial record in context. See *People v. Eyler*, 133 Ill. 2d 173, 205, 549 N.E.2d 268 (1989) (read literally, a single passage might be taken to assume the defendant's guilt, but the passage must be read in context of the entire trial).

■ The purpose of *voir dire* is to assure the selection of an impartial panel of jurors, free from bias or prejudice. *People v. Terrell*, 185 Ill. 2d 467, 484, 708 N.E.2d 309 (1998); *People v. Strain*, 194 Ill. 2d 467, 476, 742 N.E.2d 315 (2000).

■ Defendant's argument is based on the following single question and answer:

"THE COURT: If you're selected as a juror then do you promise to follow the law as I give it to you in my instructions regardless of what you personally think it should be?

JUROR: No."

Standing alone, the answer would compel the court to dismiss the juror without an objection. *Eyler*, 133 Ill. 2d at 205. Why this did not happen is clear from the seven questions posed and answered (and omitted from defendant's brief) just before this exchange:

"[1] THE COURT: Is there anything about the charges that would [affect] your ability to be a fair and impartial juror?

JUROR: No, your Honor.

■ THE COURT: If policemen testify for one side or the other, would that [affect] your ability to be fair to both sides?

JUROR: No.

■ THE COURT: Would you evaluate their testimony like any other witness?

JUROR: Yes.

■ THE COURT: If the Defendant doesn't testify would you hold it against him?

JUROR: No, your Honor.

■ THE COURT: Do you have any particular feelings or concerns with the use or sale of drugs that would [affect] your ability to give the Defendant a fair trial if you learned that he was involved in the use or sale of drugs?

JUROR: No.

■ THE COURT: If the State proves him guilty beyond a reasonable doubt, do you have any problem in returning a not guilty verdict?

JUROR: No.

■ THE COURT: If they fail to do so do you have any problem in returning a not guilty verdict?

JUROR: No."

The answer to question six and the answer to question eight, the one singled out by defendant, illustrate the importance of reading a transcript in context. *Eyler*, 133 Ill. 2d at 205. Many transcripts can be manipulated to suggest that black means white. To accept the interpretation suggested by defendant would require that we read six of the unequivocal answers of the juror as each being misunderstood.

Question six was misphrased by the trial judge. In context, the word "not" is obviously inadvertent. The phrasing of question seven makes this clear. Question seven, in context, was logically consistent with the juror's answers to questions one through five. A fair reading of question eight requires that all eight questions be addressed. It becomes clear that the juror was expressing a clear intent to be fair to both sides without bias or prejudice. See generally *People v. Buss*, 187 Ill. 2d 144, 189, 718 N.E.2d 1 (1999); *People v. Williams*, 173 Ill. 2d 48, 67, 670 N.E.2d 638 (1996) (where our supreme court has cautioned against reading *voir dire* questions and answers out of context). We note that a misstatement could have been clarified had defendant made a timely objection.

The judgment of the trial court is affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.