**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180288-U

Order filed August 10, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0288 Circuit No. 12-CF-2233 |
| JEVON D. LESLEY, | ) ) ) | Honorable Sarah-Marie Francis Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice Lytton and Justice McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The circuit court erred by summarily dismissing defendant's *pro se* postconviction petition at the first stage of proceedings because defendant set forth an arguable claim that his appellate counsel was ineffective.

¶ 2     Defendant, Jevon D. Lesley, appeals the summary dismissal of his *pro se* postconviction petition. Defendant argues that the Will County Circuit Court erred by summarily dismissing his petition because he presented the gist of a constitutional claim where he alleged that (1) appellate counsel was ineffective for failing to raise the issue that the circuit court erred by refusing to

question potential jurors on gang bias, (2) appellate counsel was ineffective for failing to preserve the issue that trial counsel was ineffective for failing to call an expert witness to testify on eyewitness identification, and (3) trial counsel was ineffective for deceiving and coercing defendant into waiving his right to testify. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2010)) for causing the death of Anthony Fearn. Before jury selection, the parties and the court agreed that the potential jurors would be asked whether they could remain fair and impartial if evidence of gang membership was introduced. Later, over defense counsel's objection, the court reconsidered this decision and refused to allow the jurors to be questioned about prejudice related to gang affiliation.

¶ 5        A detailed explanation of the trial evidence is set forth in our resolution of defendant's direct appeal. *People v. Lesley*, 2017 IL App (3d) 150755-U. Since this appeal is much narrower, our recitation of the trial evidence will be limited to the issue raised by defendant in this postconviction appeal.

¶ 6        Christopher Beale testified that he and defendant were members of a street gang called Sqad Mafia. At the time of the incident, Sqad Mafia was "getting into it" with a rival gang called Sic Made. On the night of the incident, Beale and defendant were at a party at the KO Boxing Club. A member of Sqad Mafia argued with rival gang members and defendant discharged a gun several times during the confrontation. Beale acknowledged that he told police officers a few weeks after the shooting that he did not know the identity of the shooter. Beale said that he did not want to be considered a snitch.

¶ 7        Detective Sergeant Darrell Gavin testified as an expert in the field of gangs and gang intelligence. Gavin testified that Sqad Mafia was a subgroup within the Vice Lords street gang, and Sic Made was a subgroup within the Gangster Disciples street gang. Gavin stated that Beale was a Vice Lord and defendant was a Sqad Mafia Vice Lord. Gavin testified that Fearn was not a gang member but his shooting was considered gang-related because witnesses reported that defendant was shooting toward rival gang members.

¶ 8        Jeremy Coates testified that he attended the party at the KO Boxing Club with Fearn. The party ended due to a gang dispute. Coates and Fearn were not gang members. Coates and Fearn were present on the street after the party when the shooting began. Coates jumped into a van. He saw that Fearn had been shot. The next day, Coates selected a photograph from a photographic lineup but Coates was only "35 to 40 percent sure" that this person was the shooter. The photograph Coates selected was not a photograph of defendant.

¶ 9        Over one year later, Coates told the police that he saw a photograph of an individual named "Guru," who Coates recognized as the shooter. Other evidence in the case showed that "Guru" was defendant's nickname. Coates then identified defendant from a photographic lineup.

¶ 10        Brittani McElrath testified that she was present at the party on the night of the incident. McElrath had been in a romantic relationship with defendant. She acknowledged that she told police hours after the shooting occurred that she did not know the identity of the shooter. She also acknowledged that she previously testified before the grand jury that she witnessed defendant fire a gun on the night of the incident. During McElrath's grand jury testimony, she explained that she did not identify defendant as the shooter from a photographic lineup presented to her by the police because she was scared.

¶ 11        Patrick Sawyer testified that he attended the party on the night of the incident. He became involved in an altercation with Beale about gang signs. Sawyer was in the Sic Made street gang at the time and he believed Beale and defendant were Vice Lords. Sawyer acknowledged that he previously told the police that he saw defendant holding a gun right after the shooting, but at the time of his testimony, he was no longer certain.

¶ 12        Sherman Adkins testified that, on the night of the incident, he saw defendant raise a black pistol and start shooting. Adkins spoke with an officer on the night of the shooting but failed to report that he observed defendant discharge the weapon. Adkins stated that he did not want to become involved.

¶ 13        Malery Taylor testified for the defense. She stated that she observed the shooting from her apartment window and noticed that the shooter had dreadlocks. Defendant's barber testified that defendant did not have dreadlocks at the time of the incident.

¶ 14        Anissa Haymon testified that she saw Makhi Jones fire the gun on the night of the incident. She did not know defendant and did not see him that night. Haymon stated that she initially told the police that Jones was the shooter. She told them that Beale was the shooter one year later because her aunt believed it was Beale.

¶ 15        During the State's closing argument, the prosecutor stated that the discrepancies in the witnesses' accounts of the incident were attributable to the "[g]ang culture" and the consequences for "[s]nitching." Following closing arguments by counsel and the receipt of jury instructions from the court, the jury found defendant guilty. The court sentenced him to 57 years' imprisonment on one count of first degree murder. On appeal, we affirmed defendant's conviction and sentence. *Lesley*, 2017 IL App (3d) 150755-U.

¶ 16 Defendant filed a *pro se* postconviction petition alleging, *inter alia*, that trial counsel was ineffective for (1) failing to obtain an expert witness on eyewitness identification, (2) failing to question the venire members about gang bias, and (3) using deception and coercion to cause defendant to waive his right to testify. Defendant also argued that his appellate counsel was ineffective for failing to raise these issues.

¶ 17 Regarding the second claim, the petition alleged: "Neither trial counsel nor the trial judge questioned potential jurors regarding possible bias toward gang members, and the gang bias *voir dire* issue was never raised on appeal." The petition also alleged that failure to ask these questions constituted reversible error. The petition cited *People v. Strain*, 194 Ill. 2d 467 (2000) for the proposition that a defendant must be given the opportunity to question prospective jurors about gang bias when testimony regarding gang-related activity is to be an integral part of the trial.

¶ 18 The circuit court summarily dismissed the petition.

¶ 19                                II. ANALYSIS

¶ 20 Defendant argues that the circuit court erred by summarily dismissing his *pro se* postconviction petition because his petition set forth the gist of constitutional claims that: (1) appellate counsel provided ineffective assistance in failing to raise the issue that the circuit court committed plain error by refusing defense counsel's request to ask potential jurors whether they would be prejudiced by evidence that defendant was in a street gang, (2) appellate counsel was ineffective for failing to preserve the issue that trial counsel was ineffective for failing to call an expert witness to testify on eyewitness identification, and (3) trial counsel was ineffective for deceiving and coercing defendant into waiving his right to testify. We begin our analysis with

5

defendant's claim that appellate counsel provided ineffective assistance by failing to argue that the circuit court erred by failing to question the potential jurors about gang bias.

¶ 21 A postconviction proceeding contains three stages. *People v. Hodges*, 234 Ill. 2d 1, 11 (2009). At the first stage, the circuit court independently reviews the petition and, taking the allegations as true, determines whether the petition is frivolous or patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9; 725 ILCS 5/122-2.1(a)(2) (West 2018). "The allegations of the petition, taken as true and liberally construed, need only present the gist of a constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010). A petition may only be dismissed at the first stage if it has no arguable basis in fact or law. *Tate*, 2012 IL 112214, ¶ 9. "Where defendants are acting *pro se*, courts should review their petitions 'with a lenient eye, allowing borderline cases to proceed.' " *Hodges*, 234 Ill. 2d at 21 (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)).

¶ 22 "At the first stage of postconviction proceedings ***, a petition alleging ineffective assistance [of counsel] may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. The prejudice inquiry for a claim of ineffective assistance of appellate counsel requires the court to examine the merits of the underlying issue, as a defendant is not prejudiced by appellate counsel's failure to raise a nonmeritorious claim. *People v. Borizov*, 2019 IL App (2d) 170004, ¶ 14.

¶ 23 In this appeal, defendant argues that his petition set forth an arguable claim that appellate counsel was ineffective for failing to raise an issue related to the circuit court's decision that venire members should not be questioned about potential gang bias. As cited by defendant in the *pro se* petition, our supreme court's decision in *Strain*, 194 Ill. 2d 467 supports this contention.

In *Strain,* the supreme court held "when testimony regarding gang membership and gang-related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias." *Id.* at 477. The *Strain* court concluded the circuit court's refusal to ask venire members about potential gang bias denied the defendant "an informed and intelligent basis on which to assert challenges for cause or to exercise peremptory challenges." *Id.* at 481. The *Strain* court reversed and remanded for a new trial. *Id.*

¶ 24     In the instant case, like in *Strain*, there was a substantial amount of gang-related evidence presented to this jury. Further, the prosecution presented expert testimony regarding the culture of gangs.

¶ 25     Defendant acknowledges that the jury selection issue was forfeited for direct appeal due to his trial counsel's failure to include it in a posttrial motion. However, for purposes of this appeal, defendant asserts that appellate counsel could have raised the issue under the plain error doctrine. It is well accepted that:

> "The plain-error doctrine allows errors not previously challenged to be considered on appeal if either: (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) the error was so fundamental and of such magnitude that it affected the fairness of the trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Wilmington*, 2013 IL 112938, ¶ 31.

¶ 26     The evidence in this case was arguably closely balanced on the issue of whether defendant was the shooter. The evidence supporting the prosecution's view that defendant was the shooter was based on eyewitness testimony from various individuals, many of whom had

given prior statements that were inconsistent with their testimony. Defendant also presented evidence that Jones or an unidentified individual with dreadlocks could be the shooter.

¶ 27    We acknowledge that the claim defendant raises in this appeal varies slightly from the contentions raised in defendant's *pro se* petition. Yet, the *pro se* petition included defendant's reference to the holding of *Strain*, alleged that the circuit court failed to question the potential jurors about gang bias, and asserted that appellate counsel was ineffective for failing to raise the issue. We believe that these allegations, liberally construed, stated the gist of a constitutional claim that appellate counsel was ineffective for failing to argue that the court erred by failing to question the potential jurors about gang bias.

¶ 28    Thus, we hold that defendant has demonstrated that his appellate counsel arguably provided ineffective assistance by failing to argue that the circuit court committed plain error by failing to question the jurors about gang bias at defense counsel's request. As discussed above, existing case law reveals that this issue was potentially meritorious and may have been successful on direct appeal.

¶ 29    Having concluded that defendant presented the gist of a constitutional claim with regard to one of the claims in his *pro se* postconviction petition, the whole petition must advance to the second stage. See *People v. Rivera*, 198 Ill. 2d 364, 374 (2001) ("[S]ummary partial dismissals made during the first stage of a post-conviction proceeding are not permitted under the Act."). Accordingly, we need not address defendant's additional arguments that he presented the gist of a constitutional claim as to two other claims in his *pro se* postconviction petition.

¶ 30                                III. CONCLUSION

¶ 31    The judgment of the circuit court of Will County is reversed. The matter is remanded for second-stage postconviction proceedings, including the appointment of counsel.

¶ 32        Reversed and remanded.