THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH FURDGE, Defendant-Appellant.

First District (6th Division)   No. 1—01—2220

Opinion filed July 26, 2002.

Rita A. Fry, Public Defender, of Chicago (Pamela Leeming, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Dawn Kibbon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Kenneth Furdge and Earl Galtney were charged with attempted murder and aggravated battery with a firearm of Anthony Tripp and Brunett Stewart. They were tried simultaneously by separate juries. Earl Galtney is not involved in this appeal. The jury found defendant Furdge guilty as charged and he was sentenced to 23 years in the Il-

linois Department of Corrections. On appeal defendant contends: (1) introduction of gang evidence together with reference to that evidence in argument by the State deprived him of a fair trial; (2) trial counsel was ineffective for failing to probe juror bias against street gangs; (3) the trial judge erred in finding no *Batson* violation; and (4) the jury was *improperly instructed as to the law regarding identification* testimony.

## BACKGROUND

Anthony Tripp testified that on March 24, 1998, at approximately 10 a.m., he rode his bicycle through the lobby of the building at 4848 South State Street in Chicago. He saw six men, including defendant and codefendant, in the lobby. He came into contact with defendant and words were exchanged. Tripp knew defendant and codefendant from growing up in the same neighborhood, and he had known defendant for 11 to 12 years. Tripp testified he did not know if he bumped into defendant or if defendant bumped into him, but when he passed defendant, they bumped into each other. Defendant stated "you better watch that shit" and Tripp responded, "my fault." Tripp took the same shortcut back home. Defendant and codefendant were still in the lobby of the building and told Tripp to "watch that shit." Tripp responded that he "ain't with that stuff." At that point, codefendant pulled out a gun and said, "fuck that." Defendant pulled out his gun and shot, but Tripp ducked.

Tripp attempted to escape on his bicycle. Tripp heard shots, stumbled, and turned around. He saw defendant and codefendant firing their guns at him. Tripp got outside, but fell. Defendant and codefendant approached Tripp as he was lying on the ground. Codefendant threw a hat at Tripp and said "die bitch." Defendant pointed his gun at Tripp but did not shoot. The police arrived and took Tripp to the hospital. Tripp was treated for a gunshot wound to the back which permanently paralyzed him from the waist down. Tripp knew defendant and codefendant from the neighborhood and told the detectives who shot him. He also identified defendant from a photograph within hours of the shooting.

On direct examination by the State, Tripp testified that he was a member of the Gangster Disciples street gang and defendant and codefendant were members of the Black Disciples. At the time of the shooting the gangs were at peace. The building through which he rode his bike was known as Black Disciples territory.

Brunett Stewart, a 76-year-old retired bricklayer, testified that around 10:30 a.m., when the shooting took place, he was waiting for the mail in the lobby of the building where he lived at 4848 South

State Street. He heard shots and someone yell, "I told you you don't come in here." He saw someone run out of the building and fall to the ground. Stewart jumped over this person and ran back to his apartment. He then realized that he had been shot in his side, was taken to the hospital, treated, and released. Stewart testified that he did not see the faces of any of the people involved in the shooting.

The mailman, Angel Garcia, was delivering mail when the shooting started. He saw two men chasing a man and he saw one of the men shooting across the lobby. He did not see their faces. He described one man as taller and thicker than the second man, who was shorter and thinner.

On the day of the shooting, March 24, 1998, Detective Lenihan showed five Polaroid photographs to Tripp while he was in the hospital. Tripp identified codefendant Galtney as one of the shooters and told the detective that defendant and a man named DeShawn were also involved. Later that evening, around 10 p.m., Tripp identified DeShawn and defendant in a computer-generated photo lineup which Detective Lenihan showed him at the hospital.

After the State rested its case, defendant presented the testimony of one witness, Regina Starling. Starling was a friend of defendant's mother and had known defendant for six to eight years. She provided an alibi for defendant during the time when the shooting occurred. She testified that defendant was at her house from 9:30 a.m. until 1 p.m. She admitted that this was the first time defendant came to her house.

## I. GANG EVIDENCE

■ Defendant contends he was denied a fair trial by the introduction of gang evidence where no evidence demonstrated that the shooting was gang related. The prosecution responds that the gang evidence was admitted at trial to show defendant's motive for the shooting. A trial court's decision to admit gang evidence will not be reversed unless the record demonstrates an abuse of discretion. *People v. Shum*, 117 Ill. 2d 317, 353 (1987). We note the prosecution is not required to prove motive in order to sustain a conviction for attempted murder and aggravated battery. While it is permissible for the State to produce evidence of motive, the motive must be attributable to the defendant at the time the crime was committed. *People v. Smith*, 141 Ill. 2d 40, 57 (1990).

The prosecution relies on *People v. Colon*, 162 Ill. 2d 23 (1994), to support its argument that the gang evidence was related to the crimes charged because it established motive. In *Colon*, the Illinois Supreme Court found the gang evidence was properly admitted to establish mo-

tive and affirmed the defendant's conviction for murder committed during the course of a drive-by shooting. Witnesses testified that the victim was a Latin King and the area of the shooting was Latin Kings' territory. *Colon*, 162 Ill. 2d at 30. The defendant was an Imperial Gangster and these two gangs "do not get along." *Colon*, 162 Ill. 2d at 30. The court found the gang evidence was relevant to establish motive. *Colon*, 162 Ill. 2d at 30.

Here, the prosecution contends the gang evidence helped explain the motive for the shooting. Although the record did not reflect that the Gangster Disciples and Black Disciples were at war, it is clear that defendant and Anthony Tripp had some type of altercation which escalated into a shooting. At the time of the shooting, Tripp was a member of the Gangster Disciples and defendant was a member of the Black Disciples. Tripp had known defendant from the neighborhood for many years. Defendant and Tripp had a verbal altercation after Tripp bumped into defendant while riding his bicycle through the building. Tripp testified that before the shooting, he rode his bike through the building and had an altercation with defendant. Tripp and defendant bumped into each other and the defendant said, "you better watch that shit." There was no mention of gang turf and no gang slogans or signs were used. Tripp testified the two rival gangs were at peace. However, both Tripp and defendant belonged to rival gangs and the altercation in the Black Disciples building escalated into a shooting.

■ We are mindful that Illinois courts have consistently recognized that street gangs are regarded with considerable disfavor by our community. *People v. Gonzalez*, 142 Ill. 2d 481, 489 (1991). The Illinois Supreme Court has held that evidence indicating a defendant is a member of a street gang or is involved in gang-related activity is admissible only where there is sufficient proof that membership or activity in the gang is related to the crime charged. *People v. Patterson*, 154 Ill. 2d 414, 458 (1992); *Smith*, 141 Ill. 2d at 58.

■ ■ The prejudicial effect of gang evidence dictates our holding that when testimony regarding gang-related evidence is to be admitted at trial, there must be a relevancy connection between the gang evidence and the crime charged. Tripp and defendant, two rival gang members, bumped into each other. Tripp, a member of the Gangster Disciples, was in a building undisputed to be Black Disciples territory. When the shooting started, Brunett Stewart heard someone yell, "I told you you don't come in here." Tripp was shot not when he and defendant initially bumped into each other, but when he decided to return to the Black Disciples building and encountered defendant a second time. Based on this record, we find a sufficient relevancy con-

nection both direct and circumstantial between the gang evidence and the crimes charged. Moreover, any prejudicial effect from the fact that defendant was a Black Disciple gang member was minimized by the fact that Tripp also admitted he was a member of the rival Gangster Disciples.

■ We find the State's comments during its opening statement and closing argument about the gang-related evidence proper. During opening statement the prosecutor accurately informed the jury in a factual manner as to what it was going to hear when the victim testified; in closing argument the prosecutor, based on the evidence and reasonable inference, simply argued that the shooting was gang-motivated. That argument was based on reasonable inferences supported by the record. *People v. Manley*, 222 Ill. App. 3d 896, 907 (1991) (arguments that are based on the facts or reasonable inferences drawn from the evidence are proper).

Moreover, if any error occurred it was harmless. The gang evidence introduced was minimal. The reference to the gang evidence was minimal. No testimony or argument was offered about gang wars in Chicago. No testimony or argument was offered regarding the structure of street gangs and the history of the Gangster Disciples and Black Disciples. The gang evidence introduced indicated that Tripp was a member of the Gangster Disciples, defendant was a member of the Black Disciples, and the building used as a shortcut by Tripp was the territory of the Black Disciples. When Tripp returned to the Black Disciples building, Brunett Stewart heard someone yell, "I told you you don't come in here." Tripp positively identified defendant within hours after the shooting and had known him from the neighborhood for many years. For the reasons previously discussed, we find sufficient proof that the gang evidence provided an explanation or motive for the senseless shooting. Here, the gang evidence was minimal and the victim was also a gang member. Therefore, the admission of the gang evidence and the State's comments during opening statement and closing argument were not error. If any error occurred, the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828 (1967).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Defendant argues that his trial counsel was ineffective for failing to question potential jurors as to any bias against gangs. Defendant contends that this failure denied him an informed and intelligent basis on which to assert challenges for cause or to exercise peremptory challenges in excusing potential jurors. The sixth amendment to the United States Constitution entitles a defendant to the assistance of

counsel. U.S. Const., amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *Mc-Mann v. Richardson*, 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763, 773 n.14, 90 S. Ct. 1441, 1449 n.14 (1970). To prove ineffective assistance of counsel, a defendant must establish that defense counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).

■ The decision as to whether to question a potential juror on a particular subject is considered to be one of trial strategy, which has no bearing on the competency of counsel. *People v. Palmer*, 188 Ill. App. 3d 414, 428 (1989). To prevail on a claim of ineffective assistance of counsel, a defendant must overcome a strong presumption that the challenged conduct was one of sound trial strategy. *People v. Williams*, 147 Ill. 2d 173, 235 (1991). To satisfy the first prong of the *Strickland* test, a defendant must demonstrate deficient performance in that his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

We note that in this case, both the victim, Anthony Tripp, and the defendant were gang members. It is reasonable that defense counsel as a matter of trial strategy concluded that questioning the venire about bias against gangs would serve no purpose since both the victim and defendant were similarly situated. Here, where the gang evidence was limited to explain motive and the victim was also a gang member, defense counsel could have reasonably concluded as a matter of trial strategy that his questioning, which could serve to unduly emphasize the gang issue, outweighed any potential prejudice a venire member may have had. Moreover, defense counsel could have reasonably concluded that any prejudice against gang members would have also operated against the State, since its victim and only eyewitness was an admitted gang member.

In support of the argument that trial counsel was ineffective for failing to question potential jurors regarding any possible gang bias, defendant relies on *People v. Strain*, 194 Ill. 2d 467 (2000). However, in the context of this case we do not find that *Strain* supports defendant's claim of ineffective assistance of trial counsel. *Strain* did not address whether defense counsel was ineffective for failure to question potential jurors about gang bias. Rather, *Strain* addressed whether the trial court, after questioning the jury venire about gang bias, erred in refusing to ask two additional questions submitted by defense counsel regarding gang bias. The Illinois Supreme Court found the trial court erred because the defendant was "denied an informed and intelligent basis on which to assert challenges for cause or to exercise peremptory challenges." *Strain*, 194 Ill. 2d at 481.

In articulating the basis for reversing the defendant's murder conviction and remanding for retrial, the *Strain* court noted the following facts demonstrated by the record regarding the nature and extent of the gang evidence: (1) the State reminded the jurors throughout opening and closing arguments of the importance of gang testimony at trial; (2) numerous police officers assigned to gang units, police detectives, and gang members all testified that a gang war was underway between the Gangster Disciples and the Black Disciples; and (3) defendant was intent on obtaining revenge against the Gangster Disciples and, as a police informant, gave information leading to the arrest of members of the Gangster Disciples. *Strain*, 194 Ill. 2d at 479. The *Strain* court concluded:

> "Given this list of witnesses, the importance of gang testimony at trial, and the prejudice which may attach to such testimony, the trial court should have questioned the prospective jurors to determine whether they harbored any gang bias or prejudice." *Strain*, 194 Ill. 2d at 479.

Unlike *Strain*, here the gang evidence was introduced through one witness only and was limited to proving motive. There was no litany of witnesses discussing gang rivalry, gang war, or gang territory. Unlike *Strain*, the prosecution in opening statement and closing argument limited factual reference to gang evidence as it related to motive. Unlike *Strain*, here the gang testimony was very limited, did not permeate the trial and did not attain the level of importance as did the gang testimony in the *Strain* case. We find, based on this record, that the decision by defense counsel not to question potential jurors about gang bias was trial strategy, not deficient representation which fell below an objective standard of reasonableness. As such the first prong of the *Strickland* test is not satisfied by this record.

Defendant failed to demonstrate the second prong of the *Strickland* test. We cannot conclude that defendant was prejudiced by his counsel's failure to question potential jurors about gang bias. The gang evidence presented to the jury was limited. The jury heard testimony from Anthony Tripp that he was a Gangster Disciple and that defendant was a Black Disciple. Tripp testified that at the time of the shooting, there were no problems between the rival gangs when he rode his bike through a building known as Black Disciple territory. When the shooting started, a witness, Brunett Stewart, heard someone yell, "I told you you don't come in here." Based on the limited nature of the gang evidence which was offered to explain the motive for the shooting, we do not find defendant was prejudiced by trial counsel's decision not to explore gang bias with potential jurors during *voir dire*. That decision was a matter of trial strategy. *Palmer*, 188 Ill. App. 3d at 428.

In making the determination of deficiency and prejudice, the court must examine the totality of the circumstances. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069. We are mindful that a defendant is entitled to competent, not perfect, representation. *People v. Eddmonds*, 101 Ill. 2d 44, 69 (1984). We further note that the competence of defense counsel is to be determined "from a consideration of the totality of counsel's conduct, not isolated incidents." *People v. McKendrick*, 138 Ill. App. 3d 1018, 1025-26 (1985), citing *People v. Mitchell*, 105 Ill. 2d 1 (1984). Considering the totality of trial counsel's conduct, we note that trial counsel competently defended this case, made an opening statement and closing argument, conducted effective cross-examination, appropriately objected to certain questions, called an alibi witness on behalf of defendant, and made appropriate motions before and after trial. In the factual context of this case, we do not find trial counsel was ineffective for failing to question potential jurors about gang bias. For the reasons previously discussed, we find neither the deficiency nor the prejudice prong of the *Strickland* test is satisfied by the conduct of defense counsel in representing defendant.

### III. *BATSON* VIOLATION

Defendant contends that the State, in exercising two peremptory challenges against two African-American women, violated the principles articulated by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). Equal protection is denied where a defendant is tried by a jury from which prospective jurors have been purposefully excluded because of their race. *Batson*, 476 U.S. at 85, 90 L. Ed. 2d at 80, 106 S. Ct. at 1716. In *Batson*, the Supreme Court held that a prosecutor cannot excuse potential jurors solely on the basis of their race or on assumptions about African-American jurors as a group. *Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719. Here, after considering argument made by defense counsel, the trial court found that defendant failed to make a *prima facie* case of purposeful discrimination under *Batson*. The trial court further noted that there were a number of African-American jurors serving on the jury.

In *Batson*, the Supreme Court provided a three-step process for evaluating discrimination alleged by a defendant in jury selection as follows: (1) the defendant is required to establish a *prima facie* case of purposeful discrimination "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose" (*Batson*, 476 U.S. at 93-94, 90 L. Ed. 2d at 85-86, 106 S. Ct. at 1721); (2) if the defendant demonstrates a *prima facie* case, the burden then shifts to

the State to provide race-neutral reasons for the exercise of peremptory challenges (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723); and (3) the trial court considers the reasons provided by the State, the defendant may argue that the reasons are pretextual, and the trial court then makes a final determination as to whether the defendant has established purposeful discrimination (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724).

At the first stage of the three-step process, a *prima facie* showing of purposeful discrimination in the selection of the jury requires the defendant to demonstrate the following: (1) the defendant is a member of a cognizable racial group; (2) the State exercised peremptory challenges to remove venire members of the defendant's race; and (3) the facts and any relevant circumstances in the case raise an inference that the State exercised peremptory challenges to remove prospective jurors based upon their race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723. The Illinois Supreme Court has offered guidance regarding what factors a trial judge should consider at the *prima facie* stage to determine whether the defense has demonstrated purposeful discrimination:

> "In determining whether a *prima facie* case of discriminatory jury selection has been established, the following relevant circumstances should be considered: (1) racial identity between the defendant and the excluded venirepersons; (2) a pattern of strikes against African-American venirepersons; (3) a disproportionate use of peremptory challenges against African-American venirepersons; (4) the level of African-American representation in the venire as compared to the jury; (5) the prosecutor's questions and statements during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses."
> *People v. Williams*, 173 Ill. 2d 48, 71 (1996).

See also *People v. Hudson*, 157 Ill. 2d 401, 426 (1993).

A finding that defendant has failed to demonstrate a *prima facie* case of purposeful discrimination is a finding of fact that will not be reversed unless it is against the manifest weight of the evidence. *People v. Coleman*, 155 Ill. 2d 507, 514 (1993). We review the evidence in its entirety to determine whether the trial judge's ruling is against the manifest weight of the evidence. *People v. Andrews*, 146 Ill. 2d 413, 428 (1992).

Here, during juror *voir dire* the State exercised *three* peremptory challenges in total. The State excused two African-American women and one alternate juror who the defendant indicated was not

African-American. Defense counsel objected and sought the State's reasons for the motion to excuse the two African-American women. The trial court found that defendant failed to demonstrate a *prima facie* case of racial discrimination and did not require the State to provide reasons for the challenges to the two African-American women. The trial court noted that there were "still a number of African-Americans still on" the jury. The hearing did not advance from the *prima facie* stage to the second stage of the three-step process for evaluating alleged purposeful discrimination in jury selection. The State, therefore, was not required to provide race-neutral reasons for the exercise of its peremptory challenges because the defendant failed to demonstrate a *prima facie* case of purposeful racial discrimination. *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

Defendant relies on an alleged disproportionate use of peremptory challenges by the State to strike African-Americans off the jury in support of the argument that the State violated the principles articulated in *Batson*. However, the record does not support that argument. The record reflects that defendant, two of the excused jurors, and Anthony Tripp, the only victim who identified defendant, were African-American. Defendant concedes in his brief that "[o]ther relevant factors do not support the inference of jury discrimination because this was not an interracial crime and the prosecutor's questions raised no such inference of discrimination." Moreover, the record indicates that the State had peremptory challenges remaining and did not use them to strike any other African-Americans. The other panels of potential jurors were accepted by the State with no challenge. During jury selection, the State exercised in total two peremptory challenges against two African-Americans and one peremptory challenge against an alternate juror who defendant indicates was not African-American. As recognized in *People v. Heard*, "The mere number of black venirepersons peremptorily challenged, without more, will not establish a *prima facie* case of discrimination." *People v. Heard*, 187 Ill. 2d 36, 56 (1999). Based on this record, the exclusion of two African-Americans from the jury fails to establish a disproportionate use of peremptory challenges by the State.

In this case, the record does not reflect the race of the venirepersons. In order to provide meaningful appellate review of a *Batson* issue, the record should disclose the race of the venirepersons. *People v. Johnson*, 183 Ill. 2d 176, 190 (1998). We recognize that the absence of such information will not overcome strong evidence weighing in favor of a *prima facie* case. *Andrews*, 146 Ill. 2d at 434-35. However, the record does not provide the race of those jurors selected to serve or the race of the venirepersons. We further note that defense counsel

did not challenge the trial judge's observation that there were a number of African-Americans on the jury. The lack of an adequate record showing relevant circumstances can preclude a finding of a *prima facie* case of purposeful discrimination. *People v. Pasch*, 152 Ill. 2d 133, 163-64 (1992). The defense concedes that there were no statements or questions by the State to suggest that exclusion of the two African-American jurors was motivated by race.

We are mindful that the exclusion of just one venireperson based on race is unconstitutional and requires reversal of the conviction. *People v. McDonald*, 125 Ill. 2d 182, 200 (1988). However, under the circumstances of this case, the trial court's finding that defendant failed to establish a *prima facie* case is not against the manifest weight of the evidence. *People v. Harris*, 129 Ill. 2d 123, 175 (1989). Since the defendant asserting the *Batson* claim has the burden of preserving the record, any deficiencies or ambiguities in the record are to be construed against the defendant. *Hudson*, 157 Ill. 2d at 428. Based on this record, defendant has not met his burden of proving a *prima facie* case as required by *Batson*, through facts and relevant circumstances, that the prosecution's exercise of peremptory challenges was racially motivated. *Batson*, 476 U.S. at 93-94, 90 L. Ed. 2d at 85-86, 106 S. Ct. at 1721; *Pasch*, 152 Ill. 2d at 164. Applying the principles articulated in *Batson*, we find, based on this record, that it was not against the manifest weight of the evidence for the trial court to conclude that defendant failed to demonstrate a *prima facie* case of purposeful racial discrimination by the State in using its peremptory challenges.

## IV. JURY INSTRUCTION

██ Defendant contends the jury was improperly instructed with Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992) (hereinafter IPI Criminal 3d). While admitting the alleged error was not properly preserved for review, defendant argues this court has the authority to review it under plain error. We do not find the strength of the evidence in this case merits application of the plain error principle. *People v. Nielson*, 187 Ill. 2d 271, 296-97 (1999).

However, waiver aside, we find this case distinguishable from *People v. Gonzalez*, 326 Ill. App. 3d 629 (2001). Defendant contends the trial court erred by inserting the word "or" between the factors of the jury instruction regarding eyewitness testimony. In *Gonzalez*, this court held that the use of the word "or" between each factor was erroneous because the "incorporation of the term 'or' between each factor implies, as a matter of law, that the identification testimony of an eyewitness may be deemed reliable if just one of the five factors listed weighs in favor of reliability." *Gonzalez*, 326 Ill. App. 3d at 640.

Unlike *Gonzalez*, where the State repeatedly discussed IPI Criminal 3d No. 3.15 in closing argument, here, the State never mentioned this instruction during closing argument. Moreover, unlike *Gonzalez*, the evidence was not closely balanced. " 'An error in a jury instruction is harmless if the result of the trial would not have been different if a proper instruction had been given.' [Citation.]" *People v. Kirchner*, 194 Ill. 2d 502, 557 (2000). In considering whether the error is harmless, we are to determine "whether any error occurred—in other words, whether the instruction was correct." *People v. Dennis*, 181 Ill. 2d 87, 95-96 (1998). If an error occurred, then we must decide "whether, in spite of that error, evidence of defendant's guilt was so clear and convincing as to render the error harmless beyond a reasonable doubt." *Dennis*, 181 Ill. 2d at 96; *Chapman*, 386 U.S. at 24, 17 L. Ed. 2d at 710-11, 87 S. Ct. at 828.

Here, we find the instruction contained an error in the use of the word "or." However, a jury instruction error does not require reversal if the evidence that supports the conviction is so clear and convincing that the verdict would not have been different. *Dennis*, 181 Ill. 2d at 107; *People v. Lewis*, 165 Ill. 2d 305, 349, 352 (1995). In determining whether a claimed instructional error was so prejudicial to defendant as to constitute reversible error, we view the instruction at issue in light of the facts of the case and the evidence presented. *Lewis*, 165 Ill. 2d at 352. Based on the record before us, we cannot find this error was outcome determinative.

Anthony Tripp knew defendant from the neighborhood for many years. On the day of the shooting, while in the hospital, Tripp told the police that it was "Kenny" who shot him. He identified defendant from a photo lineup the evening of the shooting and identified defendant at trial. While neither Brunett Stewart nor Angel Garcia could identify the defendant, their description of the shooting corroborated Tripp's testimony. We find, based on the record, that the evidence was not closely balanced. Any error in providing the instruction was harmless beyond a reasonable doubt.

## V. CONCLUSION

For the reasons previously discussed, we affirm the defendant's convictions for attempted first degree murder and aggravated battery with a firearm.

Affirmed.

GALLAGHER, P.J., and O'BRIEN, J., concur.