# Illinois Official Reports

## Appellate Court

---

### *People v. Oliver*, 2013 IL App (1st) 120793

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAROLD OLIVER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0793 |
| Filed | December 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction petition at the second stage of the proceedings was upheld over defendant's contention that his appellate counsel failed to argue that improper instructions were given on the factors to be considered in evaluating eyewitness identification testimony and that his trial counsel did not object to the instructions, since defendant's conviction was affirmed in 1999 and his *pro se* postconviction petition was filed in February 2001, and the appellate court opinion in *Gonzalez*, holding that the use of "or" between the factors was error because it implied that eyewitness testimony could be considered reliable if only one factor weighed in favor of reliability, was not filed until November 26, 2001, and a claim of ineffective assistance of counsel cannot be based on the failure to invoke a ruling that had not yet occurred; furthermore, the evidence was not closely balanced and the error was harmless. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 89-CR-5408; the Hon. Matthew E. Coghlan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Rebecca I. Levy, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Quinn and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1 Petitioner, Harold Oliver, appeals the judgment of the circuit court dismissing his postconviction petition after the second stage. On appeal, Oliver contends the trial court erred in dismissing his postconviction petition where he made a substantial showing that appellate counsel was ineffective for failing to argue on direct appeal that (1) the court gave improper jury instructions on how to evaluate eyewitness identification testimony; and (2) his trial counsel was ineffective in failing to challenge the improper instruction. For the following reasons, we affirm.

¶ 2                                    JURISDICTION

¶ 3 The trial court dismissed Oliver's postconviction petition on February 24, 2012. He filed a notice of appeal that same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rule 651, governing appeals in postconviction proceedings. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 651 (eff. Feb. 6, 2013).

¶ 4                                    BACKGROUND

¶ 5 Oliver was charged with aggravated criminal sexual assault and armed robbery in connection with an incident that occurred on January 24, 1989. A jury found him guilty in March of 1991. On appeal, this court reversed his convictions and remanded for a new trial. *People v. Oliver*, 265 Ill. App. 3d 543 (1994). After the second trial, the jury again found Oliver guilty of committing criminal sexual assault and armed robbery. Oliver appealed and this court affirmed his convictions. *People v. Oliver*, 306 Ill. App. 3d 59 (1999). Oliver filed his initial *pro se* petition for postconviction relief on February 1, 2001. He subsequently filed other motions and claims, and on June 7, 2011, Oliver filed a petition to consolidate all of his

claims in one petition. The State filed a motion to dismiss on August 31, 2011. The following facts are relevant to Oliver's appeal.

¶ 6    On January 24, 1989, around 7:45 a.m., S.S. was walking to the bus stop when a man grabbed her from behind and put a gun to her neck. The man wore grey glasses and had a scar on the right side of his face. S.S. testified that she recognized the man as someone she knew from several years ago by the name of "Ralph." S.S. met Ralph through her cousin, Sharon Allison. They met at a Burger King in Chicago. S.S. recognized him as a friend of someone she dated when she was a teenager, but she had never formally met him before. Allison told S.S. that Ralph's real name was Harold Oliver.

¶ 7    The man ordered S.S. to take off her shoes, and although he warned her not to look at him, she did anyway. The man forced S.S. into a vestibule of a nearby apartment building and ordered her to take off her jacket and pull up her sweater. The vestibule had plenty of windows and the sun was shining through. S.S. could clearly see the man in that space. He tried covering her face with the jacket to keep her from seeing him, but it kept slipping off during the assault. The man inserted his fingers and his penis into S.S.'s vagina, and then he forced her to perform fellatio. After he ejaculated, S.S. spit the semen onto the floor.

¶ 8    Mildred Williams, who lived on the first floor of the building, testified that on the morning of January 24, 1989, she was talking with a neighbor when she heard a commotion in the entryway. When she went to investigate, she saw a man with his back to her and she saw S.S. She thought they were engaging in a consensual sex act and she yelled, "how dare they be in that lobby." The man turned around and made a motion as if he were putting something in his waistband. He quickly glanced at Williams before taking S.S.'s leather jacket and leaving. S.S. then screamed, "Help me, help me, I've been raped." Williams opened the door and, as S.S. cried, Williams asked a neighbor to call 911.

¶ 9    The police arrived and S.S. gave them a description of her assailant as a man she knew as Ralph, who had a scar on his face, wore glasses, and was no more than two inches taller than her. S.S. was taken to the hospital and the police took photographs of the scene and collected semen and saliva samples from the floor. After speaking with S.S. at the hospital, the police spoke with Allison. She told them that she knew Ralph from the neighborhood and she had dated him for several months. When she introduced him to S.S., S.S. replied, "I know you." Allison told police that Ralph's actual name was Harold Oliver and that he wore glasses and had a scar on his cheek over his mouth.

¶ 10   The police had photographs of Oliver and presented an array of photos, including the photo of Oliver, to S.S. S.S. picked Oliver's photo out of the array. Two days later, the police searched Oliver's residence but did not find a gun or leather jacket. They brought him into the station and after searching him found a pair of glasses in his pocket. They placed Oliver, without his glasses, in a lineup, which S.S. and Williams separately viewed. S.S. identified Oliver as her assailant, but stated that he was wearing glasses during the attack. At trial S.S. stated that she was positive in her lineup and in-court identification of Oliver. Williams could not pick out Oliver in the lineup. Oliver was taken to the lockup. However, police could not locate his glasses. In a routine search of Oliver before placing him in the lockup, police found the glasses hidden under his armpit underneath his sweater.

¶ 11   Dr. Harold Deadman, an expert in DNA analysis, performed "Restriction Fragment Length Polymorphism" testing on the fluid found on the vestibule floor. The results showed that Oliver could not be excluded as a donor of the DNA, and that the probability of a match was 1 in 41 African-American males. A new DNA profiling technique became available in 1996, and Dr. Deadman performed the "Polymerase Chain Reaction" test on the semen sample. He confirmed a match and stated that the chances of a random match among African-American males was 1 in 2,200.

¶ 12   Christine Anderson, an expert in forensic serology, testified that her testing showed that Oliver had blood type O and was a nonsecretor. As a nonsecretor, Oliver's blood type cannot be determined by examining any bodily fluids other than blood. S.S. had blood type B. Since only blood type B was found in the fluid samples, the attacker was either a nonsecretor or had the same blood type as S.S. This test ruled out approximately half of the African-American male population.

¶ 13   At trial, Oliver presented the evidence deposition of Dr. Richard Sassetti as an expert in the fields of hematology and serology. He stated that the semen in the sample tested could have come from between 78% to 81% of the African-American male population. Oliver also presented Dr. Edgardo Correa, who examined S.S. on January 24, 1989. He testified that on his report he marked that S.S. did not know her attacker. However, on cross-examination he acknowledged that he used the report to refresh his recollection and he had no independent recollection of S.S. or the questions he asked her.

¶ 14   Oliver also presented alibi witnesses. Deborah Reasno testified that she worked as a receptionist for attorney E. Duke McNeil at the time of trial. Oliver also worked in McNeil's office. Reasno stated that on January 24, 1989, she arrived at work between 8:15 and 8:30 a.m., as she did every work day. When she arrived at work, Oliver was already there using a typewriter. She saw him when she put her lunch in the refrigerator, which was in the same room. Also present in the office were McNeil, Oliver's brother Paul, who also worked for McNeil, and Emanuel Frank. Reasno testified that she referred to Oliver as "Ralph." In a previous proceeding, Reasno stated that Oliver wore glasses in 1989 and that he did not have a scar on his face. She stated that Oliver did not have to record his time of arrival at work or sign in.

¶ 15   Emanuel Frank's testimony from the first trial was read into evidence. Frank worked as a paralegal for McNeil and on January 24, 1989, he arrived at work at 7 a.m. Frank knew Oliver as "Ralph." Frank considered Oliver's brother Paul a friend whom he has known for 10 years. Paul arrived at the office at 7:15 a.m., and Oliver arrived around 7:25 a.m. that day. He did not notice whether Oliver had a scar on his face when they worked for McNeil.

¶ 16   In rebuttal, Maureen Feerick, an assistant State's Attorney, testified that she called McNeil's office on February 16, 1989, and Reasno told her that she arrived at work on January 24, 1989, at 8:30 a.m. Detective Steven Glynn stated that he was familiar with the area of the assault and where Oliver worked, and he marked both locations on a map that was shown to the jury.

¶ 17   The jury found Oliver guilty of aggravated criminal sexual assault and armed robbery. Based on Oliver's prior felony conviction of the same class within 10 years, the trial judge

sentenced him to an extended term of 60 years in prison for sexual assault and a consecutive term of 30 years for armed robbery. Oliver appealed his convictions and sentence.

¶ 18    On appeal, Oliver argued that: (1) the trial court erred in permitting the State to present experimental scientific evidence; (2) the prosecution misstated the DNA testing results in closing argument; (3) the prosecution improperly shifted the burden of proof to Oliver in questioning his expert witness on serology testing; (4) the trial court improperly admitted probability figures based on DNA tests that were substantially more prejudicial than probative; (5) the trial court erred in qualifying a prosecution witness as an expert in population genetics; (6) the trial court erroneously refused to question the venire on racial prejudice; (7) the trial court erred in admitting evidence of Oliver's prior convictions; (8) the trial court erred in denying a motion to exclude references to the victim's family; (9) the trial court erred in refusing to allow the defense to present demonstrative evidence; and (10) the State failed to prove Oliver guilty beyond a reasonable doubt. This court affirmed Oliver's convictions and sentence on June 22, 1999.

¶ 19    On January 24, 2000, Oliver filed a *pro se* postconviction petition. The trial court advanced Oliver's petition to the second stage and appointed counsel. On December 7, 2010, Oliver waived his right to counsel and proceeded *pro se*. On June 7, 2011, he filed an amended petition raising three issues: (1) his actual innocence; (2) a speedy trial violation in the first trial; and (3) he was denied a fair trial when the trial court gave the jury an improper version of Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.15). The State filed a motion to dismiss Oliver's petition which the trial court granted on February 24, 2012. Oliver filed this timely appeal.

¶ 20                                                    ANALYSIS

¶ 21    On appeal, Oliver challenges the trial court's dismissal of his postconviction petition. The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2010)) provides a three-stage process whereby a defendant may challenge his conviction and sentence on constitutional grounds. The trial court here dismissed Oliver's petition at the second stage, where a dismissal is warranted if the petitioner's allegations, liberally construed in light of the record, fail to make a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). We review the trial court's dismissal at the second stage *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 22    A postconviction proceeding is not an appeal from the judgment below but, rather, is a collateral attack on the trial court proceedings. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). The purpose of the proceeding is to allow inquiry into constitutional issues arising from the original conviction and sentence that were not, and could not have been, adjudicated on direct appeal. *People v. Harris*, 206 Ill. 2d 1, 12 (2002). Therefore, issues raised and decided on direct appeal are *res judicata* and issues that could have been raised on direct appeal but were not are forfeited. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010).

¶ 23    On appeal, Oliver argues that the jury received an improper version of IPI Criminal 4th No. 3.15, thus violating his constitutional right to a fair trial. He contends that trial counsel was

ineffective for failing to object to the instruction. At Oliver's trial, the instruction given to the jury listed the following factors to consider when evaluating eyewitness identification testimony: (1) the opportunity the witness had to view the offender at the time of the offense; (2) the witness's degree of attention; (3) the witness's earlier description of the offender; (4) the witness's level of certainty when confronting the offender; and (5) the length of time between the offense and the identification. However, when listing the factors the trial court used the word "or" in between each factor. This court held in *People v. Gonzalez*, 326 Ill. App. 3d 629, 640 (2001), that use of the word "or" between the listed factors is error because it implies that an eyewitness's identification testimony may be considered reliable even if only one of the factors weighs in favor of reliability.

¶ 24      However, this court affirmed Oliver's convictions in 1999, and he filed his initial *pro se* postconviction petition on February 1, 2001. *Gonzalez* was decided on November 26, 2001. In *People v. Chatman*, 357 Ill. App. 3d 695, 700 (2005), this court determined that a claim of ineffective assistance of trial counsel could not be based on counsel's failure to invoke a ruling that had not yet occurred. *Chatman* also held that "Illinois courts generally will not apply new rules retroactively to cases on collateral review." *Id.* Accordingly, we hold that the improper use of the word "or" between the listed factors in IPI Criminal 4th No. 3.15 occurring before November 26, 2001, may not be raised in postconviction petitions. Those violations occurring after November 26, 2001, may be raised in postconviction petitions.

¶ 25      Even on the merits, we are not persuaded by Oliver's contention. Oliver did not object to the instruction at trial or offer an alternative, nor did he raise the issue in a posttrial motion or on direct appeal. Therefore, Oliver has forfeited review of the issue on appeal. *People v. Herron*, 215 Ill. 2d 167, 175 (2005); *Ligon*, 239 Ill. 2d at 103. However, the plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is closely balanced; or (2) a clear and obvious error occurred and the error is so serious it affected the integrity of the judicial process regardless of the closeness of the evidence. *Herron*, 215 Ill. 2d at 186-87. Our supreme court has "determined that giving IPI Criminal 4th No. 3.15 with the 'ors' is indeed clear and obvious error." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The error, though, is not so serious that reversal is required regardless of the closeness of the evidence. *Id.* at 566. Instead, "defendant must meet his burden to show that the error was prejudicial–in other words, he must show that the quantum of evidence presented by the State against the defendant rendered the evidence 'closely balanced.' " *Id*.

¶ 26      Although the police did not find a gun or S.S.'s leather jacket when they arrested Oliver, the State's identification evidence against him was strong. The evidence consisted mainly of DNA evidence and S.S.'s positive identification of him as her attacker. DNA experts testified that their testing resulted in a match and that the chances of a random match among African-American males was 1 in 2,200. Furthermore, S.S.'s positive identification of Oliver alone is sufficient to sustain a conviction, even in the presence of alibi testimony, if she had an adequate opportunity to view her attacker and her identification is positive and credible. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 27     *People v. Furdge*, 332 Ill. App. 3d 1019 (2002), is instructive. In *Furdge*, the jury was also instructed with IPI Criminal 4th No. 3.15 using "or" between each factor. The defendant in *Furdge* also failed to preserve the issue for review and asked this court to address the issue as plain error. *Id*. at 1031. Although the court acknowledged that error occurred in giving the instruction, it determined that the error was harmless because the result would not have been different had the trial court given the proper instruction. *Id*. at 1032. The court viewed the error in light of the facts of the case and found that the defendant was not prejudiced by the error. It noted that the victim testified that he had known the shooter for years from the neighborhood. On the day of the shooting he told police that "Kenny" had shot him and he identified the defendant from a photo lineup that evening. He also positively identified the defendant at trial. Although other eyewitnesses could not identify the defendant, their descriptions of the shooter corroborated the victim's testimony. The court held that the evidence was not closely balanced and "[a]ny error in providing the instruction was harmless beyond a reasonable doubt." *Id*.

¶ 28     Here, the evidence at trial showed that the attack on S.S. occurred in the morning hours, around 7:45 a.m. S.S. testified that she got a good look at her attacker and recognized him as "Ralph" from the neighborhood. She was formally introduced to him by her cousin several years before, but she had known him even longer. Although her attacker told her not to look at him, S.S. continued to do so. They went into an apartment vestibule and S.S. testified that there were lots of windows and plenty of sunlight shined through. The attacker placed her jacket over her head but it kept falling down during the attack and S.S. could see his face. Upon hearing the commotion, Williams came from her apartment and yelled at them. The attacker glanced at Williams before grabbing S.S.'s jacket and leaving. After police arrived, S.S. told them that her attacker was a person named "Ralph" that she knew and he wore glasses and had a scar on his face. Williams also described the attacker as wearing glasses. The police learned from S.S.'s cousin that Ralph's real name was Harold Oliver and later that same day showed S.S. a photo array from which she identified Oliver as her attacker. Two days later, the police placed Oliver, without his glasses, in a lineup which S.S. and Williams separately viewed. S.S. identified Oliver as her assailant, but stated that he was wearing glasses during the attack. At trial S.S. stated that she was positive in her lineup and in-court identification of Oliver. Williams, however, could not pick out Oliver in the lineup. We find that, like the situation in *Furdge*, the evidence is not closely balanced and any error in giving the instruction was harmless. See also *People v. McNeal*, 405 Ill. App. 3d 647, 675-76 (2010); *People v. Brookins*, 333 Ill. App. 3d 1076 (2002).

¶ 29     Oliver disagrees, arguing that the evidence is closely balanced and citing *Piatkowski* and *Gonzalez* as support. However, these cases are distinguishable. In *Piatkowski*, none of the eyewitnesses knew the suspect previously, had as little as a few seconds to view the offender, discrepancies existed in their prior descriptions of the offender, and a lapse of more than six months occurred from the offense to the identification. *Piatkowski*, 225 Ill. 2d at 570. In *Gonzalez*, the victims did not know defendant previously and the defense presented evidence concerning inadequate lighting in the area of the shooting and the ability of the victims to actually view their attacker. *Gonzalez*, 326 Ill. App. 3d at 634. In addition, during closing argument the State in *Gonzalez* emphasized the erroneous instruction by telling the jury to

"notice that 'or' " between the factors. (Emphasis and internal quotation marks omitted.) *Id*. at 640-41. We find the case before us more similar to *Furdge* and hold that giving the improper instruction here was harmless error.

¶ 30    Oliver also alleges his appellate counsel provided ineffective assistance in failing to raise the erroneous instruction issue on direct appeal. The State argues that Oliver waived consideration of this issue because he did not include it in his postconviction petition, citing *People v. Cole*, 2012 IL App (1st) 102499. Waiver aside, Oliver cannot prevail on his ineffective assistance claim. To establish ineffective assistance of appellate counsel, Oliver must show that counsel's performance was deficient and that, but for counsel's errors, his appeal would have been successful. *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). As discussed above, the evidence against Oliver was not closely balanced and any error in giving the instruction was harmless. Oliver's appeal based on this issue would not have been successful.

¶ 31    Since Oliver has not made a substantial showing of a constitutional violation, the trial court's dismissal of his postconviction petition at the second stage was proper.

¶ 32    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 33    Affirmed.