NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 160847-U

NO. 4-16-0847

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 31, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ROSS LAMONT JOHNSON, | ) | No. 12CF1085 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Robert L. Freitag, |
| | ) | Judge Presiding. |

---

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court held the trial court's summary dismissal of defendant's *pro se* postconviction petition was proper where defendant failed to state the gist of a claim (1) he was denied the effective assistance of trial and appellate counsel, (2) he was actually innocent, and (3) his sentence was unconstitutional.

¶ 2     In October 2013, a jury convicted defendant, Ross Lamont Johnson, of attempt (first degree murder), one count of home invasion, and four counts of aggravated battery with a firearm. In January 2014, the trial court sentenced defendant to 120 years in prison. Defendant appealed, and this court affirmed his conviction and sentence. *People v. Johnson*, 2016 IL App (4th) 140346-U, ¶ 1.

¶ 3     In August 2016, defendant *pro se* filed a petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 to 122-7 (West 2014)),

alleging (1) ineffective assistance of appellate and trial counsel, (2) he was actually innocent, and (3) his sentence was unconstitutional. In October 2016, the trial court summarily dismissed defendant's petition as frivolous and patently without merit. Defendant now appeals, arguing his petition set forth the gist of a constitutional claim. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5         In October 2012, defendant was charged with four counts of attempt (first degree murder) (720 ILCS 5/8-4, 9-1 (West 2012)) (counts I, II, III, and IV), one count of home invasion (*id.* § 12-11(a)(3)) (count V), and four counts of aggravated battery with a firearm (*id.* § 12-3.05(e)(1)) (counts VI, VII, VIII, and IX). These charges stemmed from an incident in which Jonathan (Johnnie) Lipscomb, Preston Bellamy, Kwaan Mason, and Shanieca Mack were shot at a party in Bloomington, Illinois.

¶ 6         In October 2013, the case proceeded to a jury trial. On direct appeal, this court set forth all of the evidence related to defendant's claim the State failed to prove him guilty of attempted first degree murder beyond a reasonable doubt. *Johnson*, 2016 IL App (4th) 140346-U, ¶¶ 4-20. Accordingly, we set forth only those facts relevant to the resolution of this appeal.

¶ 7                              A. Evidence Presented at Trial

¶ 8         Chris Lipscomb testified on October 14, 2012, he was living in an apartment with Artize Gant. The front door off the parking lot opened directly into the living room, which was approximately 10 feet by 10 feet. That evening, Chris threw a party. He estimated 50 people were in attendance. At some point in time, Chris saw Gant in an argument with a man who used to date Gant's sister. Shortly after the argument, that man and three or four people with him left the apartment and went out to the parking lot. Gant, Chris, and Chris's cousin, Johnnie

- 2 -

Lipscomb, went out on the porch. An argument ensued with the other group and fighting words were exchanged. Chris admitted during a police interview he said he told the group to leave. Chris, Gant, and Johnnie went back inside and turned on the music.

¶ 9        Chris stayed by the door to monitor who came in and out and basically keep the door shut. Chris opened the door a couple times to admit some people. Then he went back to the party. During his police interview, Chris stated after he walked away from the door to mingle, the door opened a third time and "the three dudes" walked in. Chris was about three feet away from the door and a crowd of people from the party were near the door. Although Chris did not personally remember being punched in the face, he agreed he told the police on November 2, 2012, he was hit. Johnnie pushed the men out the door and slammed it. Johnnie yelled they had a gun. Everyone started screaming. Shots were fired and Chris heard someone say, "I'm hit, I'm hit."

¶ 10        Artize Gant testified Chris had a party at their apartment on October 13, 2012. Gant claimed he did not recall anything about who attended the party or what occurred at the party because he was drunk. During a police interview, Gant said, "[W]e [were] just having a little good time and then these dudes come [sic] in. One of them happened to be the one who beat up my little sister, so I'm like, [']you can't be here,['] and I guess they get [sic] mad." Gant told the police he told the men to leave. Gant was upstairs in the bathroom when the shots were fired. He knew people were shot but did not witness the shooting.

¶ 11        Jonathan (Johnnie) Lipscomb testified he attended the party on October 13, 2012, hosted by his cousin, Chris. He guessed 50 people were at the party when he arrived around 11 p.m. At some point, Johnnie noticed Gant in a verbal argument with someone. Johnnie and Chris went outside and Chris got into an argument with a group of seven or eight people. Fighting

- 3 -

words were exchanged. After the argument, Chris and Johnnie went back inside. Sometime later, three or four people walked through the door. Johnnie was standing nearby, in the doorway of the kitchen. Chris was punched. Johnnie agreed, during the police interview, he stated:

> "[A]ll of a sudden one dude comes to the door. He was looking around, looking around, whatever. All of a sudden another one comes to the door. He's looking around. Another one comes to the door. The third one that came through the door turns to the side and punches somebody, bam. And then I kind of wrap my arms out like this and grabbed like everybody that was right at the door, and I grabbed the handle of the door, and they're like this, boom. So everybody falls. I'm slamming the door shut on peoples' feet and everything, slamming the door shut. All of a sudden I hear a shot. Bam. That's the one. That was before the door was even shut all the way. Bam, it's one shot. I get the door shut, like it's, bam. I step back like this, turned away, another shot, bam, and that's the one that hit my shoulder."

¶ 12       Donnell Taylor testified he attended the party along with Dartaveon Miles. Taylor denied he was with defendant (also known as "Ball Head") and Malcolm Johnson or that he saw them at the party, even though he told the police he was with Malcolm, Ball Head, and "Lil E" (Eric Clark Pfeifer). Taylor claimed he was lying when he told the police he saw defendant fire an automatic weapon while standing " 'right in front of the door' " or " 'like 10 feet away.' " He said he fabricated the story because the police were threatening to lock him up for something he did not do. His recorded statements implicating defendant as the shooter were admitted as substantive evidence.

¶ 13　　　　Taylor was also impeached with his statement to detectives that defendant texted him at 2:24 a.m. on October 14 stating that "Snake" wanted Taylor to break his phone because it contained photographs of defendant with guns. The State then introduced Exhibit Nos. 188 and 191—which Taylor acknowledged were extracted from his mobile phone—over defendant's objection: Exhibit No. 188 was a photograph of Malcom displaying what appeared to be a semi-automatic handgun with an extended clip; Exhibit No. 191 was a photograph of defendant, Malcom, Taylor, and Miles and depicted Malcom holding a firearm.

¶ 14　　　　Deonte Harris agreed he told the police, " 'I'm, like, they start firing at the door. I mean I don't know how big the caliber of the bullet is it can go through this damned door and tear us all up, so I'm trying to shut the door and lock it so they just don't run back in here and start shooting the party.' " Harris also testified he could not recall telling the police, " 'The door like cracked open, so the guy just shoots inside the door. I can see like basically—I don't know if it was his arm or the barrel of a gun, you know, just the light just flashing from it.' " At the police station, Harris picked defendant's photograph out of a lineup as being with the group responsible for shooting the gun into the party.

¶ 15　　　　Jonathan Reddington testified he had been incarcerated at the McLean County jail since June 2013 on two criminal cases and had a history of criminal convictions. He and defendant had been housed together in the jail for nearly two months. As Reddington and defendant discussed their pending cases, defendant said he and a couple other people had been at a party where there were people he did not get along with over a gang dispute. Defendant said he left the party and returned to "do it to 'em or do 'em in." He told Reddington he shot them. Reddington testified, on another occasion after defendant had received a visit from his attorney, defendant said he was pretty sure he was going to beat the case, and, if he got out, he was going

to find the victims and finish what he started. Following this conversation, Reddington wrote a letter to his mother disclosing defendant's statements. Apparently, Reddington's mother turned the letter over to the police, who then interviewed Reddington.

¶ 16 The State presented a recording of an outgoing call from the jail on October 18, 2012. Detective Steven Fanelli testified he recognized the voice as that of defendant. In the recording, defendant states, "I need them to step on toes for me," "I just need mother fuckers to step on toes," and "just step on mother fucker toes for me that's it." The caller referred to himself as the "boss" and stated, "I just need everybody to like stick together right now and everything." When asked what he believed defendant meant by "step on toes," Detective Fanelli responded, "I believe he was asking about intimidating the victims, and especially with the response of the person saying, 'two down, two to go.' "

¶ 17 In addition to Johnnie, three other people were injured during the shooting— Shanieca Mack, Kwaan Mason, and Preston Bellamy. Mack testified she was standing in front of the television. She saw Malcolm punch Chris and then she heard four or more shots fired. Mack was shot three times in the chest and once in the left leg near her hip. Mason testified he had his back turned to the door and was facing the television. He was shot in the right side of the hip, which went through his back and exited the left buttock.

¶ 18 Preston Bellamy testified he was standing between the living room and kitchen when he saw Malcolm punch Chris. He turned around, heard a gunshot, and was shot. Bellamy was shot in the back. The bullet traveled out the right side of his face. Bellamy had to have his mouth wired shut, a tracheotomy, and a tube in his stomach. He stated he nearly died.

¶ 19 Bellamy testified Malcolm and the people he was with were kicked out of the party. A little later, Malcolm and his group forced their way back in. There was an argument

between Malcolm and Chris and he saw Malcolm punch Chris. He knew Malcom had a brother called "Ball Head." Although he claimed at trial he did not know defendant, he was impeached with his recorded statement that he first met defendant in July 2012. Bellamy testified he was not sure if he saw defendant at the party but he "didn't think so."

¶ 20        Bellamy agreed he told the police when he was interviewed in November 2012 that "Ball Head" was behind Malcolm. At trial, Bellamy testified he did not see who fired the gun because his back was turned; however, he agreed he told the police, after the first gunshot, he turned around and saw "Ball Head" shooting. He testified he did not recall saying, "Yeah," when the police asked him, "Okay, so 'Ball Head' shot you." He also said he did not recall telling the police he turned around and saw "Ball Head" shoot him, nor did he remember telling the police, "[Ball Head] was still shooting, and I just looked at him and then I just turned back around." Bellamy's statements during his police interview were recorded and admitted as substantive evidence at trial.

¶ 21        The jury found defendant guilty of all charges.

¶ 22                    C. Motion for New Trial and Appeal

¶ 23        In January 2014, defendant filed a motion for new trial. The trial court denied the motion. At sentencing, defendant maintained his innocence. The court found the four counts of aggravated battery with a firearm merged with the four counts of attempt (first degree murder). The court sentenced defendant to three 40-year consecutive sentences in the Department of Corrections (DOC) and one 40-year concurrent sentence in DOC for the four attempt (first degree murder) counts and a concurrent sentence of 15 years in DOC for the home invasion count, for a total of 120 years in DOC. In February 2014, defendant filed a motion to reconsider his sentence, which the trial court denied in April 2014.

¶ 24        On appeal, defendant argued the evidence was insufficient to convict him of attempt (first degree murder) beyond a reasonable doubt because he lacked the requisite intent. *Johnson*, 2016 IL App (4th) 140346-U, ¶ 2. This court affirmed defendant's conviction and sentence. *Id.* ¶ 1.

¶ 25                           D. Postconviction Proceedings

¶ 26        On August 5, 2016, defendant *pro se* filed a petition for relief under the Postconviction Act (725 ILCS 5/122-1 to 122-7) (West 2014)), alleging (1) ineffective assistance of appellate and trial counsel, (2) he is actually innocent, and (3) his sentence was unconstitutional. Specifically, and as relevant to this appeal, defendant alleged: (1) his appellate counsel was ineffective for failing to raise, on direct appeal, the issues of (i) the sufficiency of the evidence, (ii) the improper admission of two photographs, and (iii) the improper admission of a phone call from the McLean County jail; (2) his trial counsel was ineffective for failing to (i) question prospective jurors about gang bias, (ii) call Sharon Johnson as a witness to testify regarding the context of the phone call from the McLean County jail, (iii) object to certain evidence at trial that was ruled excluded during motions *in limine*; (iv) object to the admission of two photographs, and (v) object to the State's attorney's misstatement of the evidence; (3) he is actually innocent; and (4) his sentence was "unconstitutional in violation of the Proportionate Penalt[ies] clause, in that it shocked the moral sense of the community."

¶ 27        In support of his petition, defendant attached two affidavits: one from Sharon Johnson and one from Nathaniel Caldwell. Sharon averred that if called to testify at trial, she would have clarified that the context of the phone call from the McLean County jail— specifically the comment "two down, two to go"—was about trying to obtain financial support from family members for defendant's legal fees. According to Sharon, this statement was not

"urging or asking to intimidate witnesses" into testifying contrary to their statements to the police. Sharon averred she was never contacted or interviewed by anyone working with defendant's attorney. Nathaniel Caldwell averred that in 2012, he was a member of the Black Disciples street gang. Caldwell averred he knew defendant at that time and was certain defendant was not a member of the Black Disciples and that the altercation resulting in defendant's conviction in this case did not involve a feud between the Black Disciples and a rival gang.

¶ 28        On October 26, 2016, the trial court entered a written order dismissing defendant's petition as frivolous and patently without merit.

¶ 29        This appeal followed.

¶ 30                              II. ANALYSIS

¶ 31        On appeal, defendant argues the trial court erred in dismissing his petition as frivolous and patently without merit because he stated the gist of several constitutional claims: specifically, (1) his appellate and trial counsel were ineffective, (2) he is actually innocent, and (3) his sentence is unconstitutionally excessive. We address each of these issues in turn.

¶ 32                        A. Postconviction Proceedings

¶ 33        "The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). Proceedings under the Act are divided into three stages. *Id.* at 10. At the first stage, the defendant must set forth only the "gist" of a constitutional claim. See *id.* at 9. While this is a "low" threshold, it "does not mean that the defendant is excused from providing any factual detail to support the alleged constitutional violation." *People v. Henderson*, 2014 IL App (2d) 121219, ¶ 22, 13 N.E.3d 342.

¶ 34　　　　During the first stage of proceedings, the court must determine whether the petition is frivolous or patently without merit. *Hodges*, 234 Ill. 2d at 10. A petition is frivolous or patently without merit when it has no arguable basis either in law or in fact. *Id.* "At this stage, the circuit court is not permitted to engage in any fact-finding or credibility determinations, as all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *People v. Scott*, 2011 IL App (1st) 100122, ¶ 23, 958 N.E.2d 1046 (citing *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063, 1073 (1998)). We review the trial court's summary dismissal of a postconviction petition *de novo*. *People v. Tate*, 2012 IL 112214, ¶ 10, 980 N.E.2d 110.

¶ 35　　　　　　　　　　B. Ineffective Assistance of Counsel

¶ 36　　　　Defendant first argues the trial court erred when it summarily dismissed his petition because he stated the gist of a constitutional claim that his appellate and trial counsel were ineffective.

¶ 37　　　　In order to prevail on a claim of ineffective assistance, the defendant must show that (1) counsel's performance fell "below an objective standard of reasonableness" and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). However, at the first stage of postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphases added.) *Hodges*, 234 Ill. 2d at 17. A defendant's claim will fail if he cannot establish both prongs. *People v. Simms*, 192 Ill. 2d 348, 362, 736 N.E.2d 1092, 1106 (2000).

¶ 38       This standard applies equally when a defendant's claim is based on counsel's failure to raise a particular issue on appeal. *Id.* "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *People v. Easley*, 192 Ill. 2d 307, 329, 736 N.E.2d 975, 991 (2000). Accordingly, the reviewing court must examine the merits of the underlying issue to determine whether appellate counsel's failure to raise it arguably resulted in prejudice to the defendant. *Simms*, 192 Ill. 2d at 362. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* This is not a purely " 'outcome-determinative' " test; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1164 (1999). "If the underlying claim would not have succeeded on direct appeal, then there is no arguable legal basis for defendant's claim of ineffective assistance of appellate counsel, and summary dismissal of his *pro se* postconviction [petition] is proper." (Internal quotation marks omitted.) *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 76, 147 N.E.3d 207 (quoting *People v. Petrenko*, 237 Ill. 2d 490, 501-02, 931 N.E.2d 1198, 1205 (2010)).

¶ 39                          1. *Appellate Counsel*

¶ 40       Defendant alleges appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) whether the evidence was sufficient to convict defendant of attempt (first degree murder), (2) whether the trial court improperly admitted two photographs into evidence, and (3) whether the trial court improperly admitted a recording of a telephone call from the McLean County jail into evidence.

¶ 41                          a. Sufficiency of the Evidence

¶ 42    Defendant argues appellate counsel was ineffective for failing to challenge the sufficiency of the evidence because there was no evidence he discharged the firearm and the State's witnesses were not credible, and if those arguments had been presented, it is likely that the outcome of his direct appeal would have been different.

¶ 43    When presented with a challenge to the sufficiency of the evidence, the question before the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis and internal quotation marks omitted.) *People v. Harris*, 2018 IL 121932, ¶ 26, 120 N.E.3d 900. "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *People v. Hardman*, 2017 IL 121453, ¶ 37, 104 N.E.3d 372. Further, the reviewing court must "not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 44    Here, we find no failure in appellate counsel's decision not to raise the aforementioned issues on direct appeal. First, this court held on direct appeal that the evidence was sufficient to prove defendant had the requisite intent to support the attempt (first degree murder) conviction. See *Johnson*, 2016 IL App (4th) 140346-U, ¶ 1. Additionally, the State elicited impeachment testimony from Taylor, who admitted he told police he saw defendant fire an automatic weapon into the party while standing " 'right in front of the door' " or " 'like 10 feet away.' " The State also elicited impeachment evidence from Bellamy, who agreed he told police that after the first shot was fired, he turned around and saw "Ball Head" (*i.e.*, defendant)

- 12 -

shooting. Furthermore, Harris picked defendant's photograph out of a lineup as being with the group responsible for shooting the gun into the party. Although we acknowledge there were inconsistencies between several witnesses' statements to the police and their subsequent testimony at trial, the State provided evidence from a phone call at the McLean County jail—as will be discussed *infra*—from which the jury could have inferred an explanation for those inconsistencies and which tended to support defendant's guilt. The jury was permitted to draw inferences from the evidence and assess the credibility of the witnesses, and we do not find that this evidence was so improbable as to undermine confidence in the outcome of the trial. Accordingly, it is not likely this claim would have been successful on appeal.

¶ 45                                b. Photograph Evidence

¶ 46          Defendant further argues appellate counsel was ineffective for failing to raise, on direct appeal, the issue of whether the trial court erred in admitting Exhibit Nos. 188 and 191 because they were not relevant to defendant's guilt and were unfairly prejudicial. The State argues appellate counsel was not ineffective for failing to raise this issue because it is not arguable the trial court abused its discretion in admitting the photographs. The State further argues that even if they had been excluded, it is not likely the outcome of defendant's trial would have been different because of the overwhelming evidence of defendant's guilt. We agree with the State.

¶ 47          "All relevant evidence is admissible, except as otherwise provided by law." Ill. R. Evid. 402 (eff. Jan. 1, 2011). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). "Although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011). Generally, an attempt to obstruct an investigation or suppress evidence is relevant as evincing consciousness of guilt. See *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 21, 13 N.E.3d 1280. "The admission of evidence is within the sound discretion of a trial court, and a reviewing court will not reverse the trial court absent an abuse of that discretion." *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 84.

¶ 48　　　　　Here, appellate counsel's decision not to challenge the admission of Exhibits 188 and 191 did not prejudice defendant. First, the photographs were highly relevant to the issue of guilt because they tended to show defendant's association with Malcom, Taylor, and Miles— individuals with whom defendant was charged with home invasion by accountability. Defendant's association with those individuals also made it more likely he was involved with the shooting because several witnesses testified the shooter was in that group. The weapon Malcolm held in the other photograph also matched Taylor's description of the weapon to the police. Moreover, the State did not present the photographs to prove gang affiliation, and we find no support in the record for defendant's claim that the individuals were depicted in "gang associated poses and colors."

¶ 49　　　　　Finally—as discussed *supra*—even if these photographs had been excluded at trial, the State presented more than sufficient evidence to prove defendant guilty of attempt (first degree murder) beyond a reasonable doubt. See *Carlisle*, 2019 IL App (1st) 162259, ¶ 81 ("The overwhelming evidence of defendant's guilt in this case precludes defendant from being capable of showing that there was a reasonable probability that the outcome of the case would have been different if the photographs had not been published in the jury room."). Accordingly, it is not

- 14 -

likely an argument that the trial court improperly admitted these photographs would have been successful on direct appeal.

¶ 50                                        c. Telephone Calls

¶ 51            Defendant next argues he stated the gist of a claim appellate counsel was ineffective for failing to argue on direct appeal that the trial court abused its discretion in admitting into evidence the telephone call from the McLean County jail. The State argues it was not arguable appellate counsel was ineffective for failing to raise this issue because admission of the phone call was proper. We agree with the State.

¶ 52            Here, it is not likely a challenge to the admission of the phone call would have been successful on direct appeal because it was relevant to show defendant's consciousness of guilt and was not unfairly prejudicial. Defendant does not dispute he participated in the phone call or that the State failed to lay a proper foundation. Moreover, the content of the phone call tended to support the State's theory that defendant attempted to intimidate witnesses into testifying contrary to their prior statements to police implicating defendant: Detective Steven Fanelli testified he recognized the voice of defendant stating, "I need them to step on toes for me," "I just need mother fuckers to step on toes," and "just step on mother fucker toes for me that's it." As stated *supra*, evidence of a criminal defendant's attempt to suppress evidence is relevant as evincing consciousness of guilt. Finally, defendant offers no support for his argument that the recording "improperly allowed for the overly prejudicial impression to exist of *** gang membership." Accordingly, it is not likely that a challenge to the admission of the phone call would have been successful on direct appeal.

¶ 53                          2. *Ineffective Assistance of Trial Counsel*

¶ 54 Defendant additionally argues he stated the gist of a constitutional claim that his trial counsel was ineffective for failing to (1) question prospective jurors regarding gang bias, (2) call Sharon Johnson to testify regarding the context of the phone call from the McLean County jail, (3) object to a statement that the court previously ruled was inadmissible, (4) properly argue for the exclusion of two photographs, and (5) object to the assistant State's attorney's alleged misstatement of the evidence.

¶ 55                                a. Jury Bias Against Gangs

¶ 56 In *People v. Strain*, 194 Ill. 2d 467, 477, 742 N.E.2d 315, 321 (2000), the Illinois Supreme Court held that "evidence indicating a defendant is a member of a gang or is involved in gang-related activity is admissible only where there is sufficient proof that membership or activity in the gang is related to the crime charged." It further held that "when testimony regarding gang membership and gang-related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias." *Id.* However, the decision whether to question potential jurors on a particular subject—such as gang bias—is considered to be a matter of trial strategy, "which has no bearing on the competency of counsel." *People v. Furdge*, 332 Ill. App. 3d 1019, 1026, 774 N.E.2d 415, 421 (2002).

¶ 57 Here, trial counsel's decision not to question potential jurors regarding gang bias was neither arguably unreasonable nor arguably prejudicial. First, as stated *supra*, the decision whether to question potential jurors about a particular subject during *voir dire* is generally a matter of trial strategy that is immune from claims of ineffective assistance. See *id.* Moreover, we disagree with defendant's suggestion that the issue of gang affiliation was "pervasive" throughout the trial. Rather, much like in *Furdge*, "the gang evidence was introduced through

- 16 -

one witness only and was limited to proving motive" and absent was a "litany of witnesses discussing gang rivalry, gang war, or gang territory." *Id.* at 1027. The evidence of gang affiliation was limited to Reddington's testimony and the "gang dispute" motive was just one of two theories presented by the State: Gant told police that he kicked defendant and his group out of the party because someone in the group had "beaten up" Gant's sister. Finally, when questioned by the trial court, each juror agreed they could be fair and impartial. Accordingly, it is not arguable trial counsel was ineffective for failing to question potential jurors regarding gang bias.

¶ 58                                     b. Sharon Johnson

¶ 59        Defendant next argues trial counsel was ineffective for failing to call Sharon Johnson as a witness to explain the context of the telephone call from the McLean County jail. In her affidavit, which was attached to the petition, Sharon averred that defendant's statements about "stepping on toes" were not about intimidating witnesses, but rather convincing defendant's family members to contribute financially to his legal fees.

¶ 60        In *People v. Williams*, 264 Ill. App. 3d 278, 286-87, 636 N.E.3d 630, 635 (1993), the appellate court noted the following:

> "Generally, a witness may not offer an opinion as to the meaning of another's out of court statement. [Citation.] It is within the province of the jury to interpret such statements. [Citation.] The testimony of a lay witness should be confined to his personal knowledge, observations or sensory perceptions. [Citation.] An exception to this rule may exist, however, where a non-expert witness has special knowledge and familiarity with a subject, and his opinion may aid the jury in its deliberations."

- 17 -

¶ 61    We agree with the State that trial counsel's failure to call Sharon as a witness was not arguably ineffective assistance because her proposed testimony was likely inadmissible opinion testimony. Sharon's proposed testimony that defendant's statement to "step on toes" meant that he wanted Sharon to pressure family members to contribute to his legal fees would have gone beyond her mere sensory perception or a recitation of facts and would have required an inferential step in her mind in coming to that conclusion. See *People v. McCarter*, 385 Ill. App. 3d 919, 934, 897 N.E.2d 265, 280 (2008) (holding that it was impermissible for witness to testify her opinion as to what someone meant by the statement, "It's going down"). It was within the province of the jury to determine what defendant meant by "step on toes" in the phone call, and thus Sharon's proposed testimony likely would not have been admissible.

¶ 62    Moreover, even if trial counsel had called Sharon to testify and the trial court permitted this testimony, it is not likely that the outcome of defendant's trial would have been different given the substantial other evidence of consciousness of guilt: Reddington testified defendant wanted to find the victims and "finish" what he had started and Taylor admitted defendant sent him a text message asking him to destroy incriminating pictures from a mobile phone. Accordingly, defendant failed to show trial counsel was arguably ineffective for failing to call Sharon as a witness.

¶ 63                              c. "Two Down, Two to Go"

¶ 64    Defendant also argues that trial counsel was ineffective for failing to object when the State elicited testimony from Detective Fanelli that a third party in the phone call from the McLean County jail stated, "Two down, two to go," because the court previously excluded that statement during motions *in limine*. We disagree.

- 18 -

¶ 65        First, we agree with the State that this issue was forfeited because the improper testimony and trial counsel's failure to object were in the trial court record, defendant failed to raise the issue on direct appeal, and defendant does not argue that appellate counsel was ineffective by failing to raise this issue on direct appeal. See *Tate*, 2012 IL 112214, ¶ 8.

¶ 66        However, even if defendant's claim were not procedurally barred, defendant fails to show arguable prejudice from trial counsel's failure to object to the inappropriate testimony. Defendant is correct that the testimony was improper because the trial court ruled during motions *in limine* that the statement be excluded, and Detective Fanelli's opinion about what defendant meant in the phone call was likely also inadmissible lay opinion testimony, as explained *supra*. However, the State did not specifically ask Detective Fanelli about the phrase "two down, two to go"; rather, Detective Fanelli referenced the phrase when asked about defendant's own statements regarding "stepping on toes." The State did not ask any further questions regarding that statement and did not reference it at any other time during trial. Even if trial counsel had objected and the trial court directed the jury to disregard this isolated reference to an inadmissible hearsay statement, it is not likely that the outcome of defendant's trial would have been different.

¶ 67              d. Photographs and Objection to Misstatement of the Evidence

¶ 68        Defendant next argues that trial counsel was ineffective for failing to argue in his motion *in limine* regarding the two photographs from Taylor's mobile phone: (1) that the photos had no relationship to the disposal of a gun; (2) that they were taken on a day other than the day of the shooting; (3) that they were not relevant; and (4) that their prejudicial nature outweighed any probative value. Instead, trial counsel argued that the photos should be excluded as evidence of gang affiliation. Defendant further argues trial counsel was ineffective for failing to object

when, during the motion *in limine* hearing, the prosecutor misstated evidence that defendant acknowledged sending a text message asking Taylor to destroy incriminating photos from his mobile phone.

¶ 69   As discussed *supra*, the photographs from Taylor's phone were highly relevant to the issue of guilt because (1) they tended to prove defendant's association with Malcom, Miles, and Taylor and made it more likely he was involved with the shooting and (2) the weapon Malcolm held in the other photograph matched the description of the weapon used in the shooting. The trial court ruled the photographs were relevant and admissible and it is not likely that had trial counsel argued for their exclusion in the manner described by defendant, the outcome of that decision or the trial would have been different.

¶ 70   Finally, defendant fails to show he was arguably prejudiced by trial counsel's failure to object to the prosecutor's alleged misstatement that he acknowledged sending the text message to Taylor. The record shows the prosecutor read the transcript of defendant's comments during the police interview *verbatim* and merely argued an interpretation of what defendant's comments meant; the trial court therefore had the proper context in which to accept or reject this interpretation. Moreover, the alleged misstatement occurred during a motion *in limine* hearing and not before the jury. Accordingly, it is not likely that trial counsel's failure to object under these circumstances impacted the outcome of the trial.

¶ 71                    C. Actual Innocence

¶ 72   Defendant next argues the trial court erred because his petition stated a colorable claim of actual innocence. We disagree.

¶ 73   "The due process clause of the Illinois Constitution affords postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly discovered

evidence." *People v. Ortiz*, 235 Ill. 2d 319, 333, 919 N.E.2d 941, 949-50 (2009). To warrant a new trial, the evidence must be (1) newly discovered, (2) material and not merely cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *Id.*; *People v. Molstad*, 101 Ill. 2d 128, 134, 461 N.E.2d 398, 402 (1984).

> "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative evidence adds to the information that the fact finder heard at trial. [Citation.] Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. [Citation.] The conclusive character of the new evidence is the most important element of an actual innocence claim. [Citation.]" *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 74 Defendant's claim he is actually innocent based on Caldwell's affidavit fails as a matter of law. First, assuming Caldwell's claim that defendant was not a member of the Black Disciples is true, it does not constitute newly discovered evidence because defendant presumably knew at the time of trial that he was not a Black Disciple and that there was no gang-related feud which led to the shooting. See *People v. Jarrett*, 399 Ill. App. 3d 715, 723, 927 N.E.2d 754, 763 (2010) (holding that facts known to the defendant prior to trial do not constitute newly discovered evidence merely because the defendant was not aware of potential witnesses).

¶ 75 Moreover, this evidence is not of such a conclusive character that it would probably change the result on retrial. Even if Caldwell's testimony had been presented at trial, the State presented evidence of a motive for the shooting other than a feud between rival gangs.

Specifically, Gant told police he asked defendant's group to leave the party because someone in the group had physically assaulted Gant's sister. Additionally, Caldwell was not a witness to the events in this case and therefore his testimony would merely have impeached or contradicted Reddington's testimony that defendant admitted to being a "BD." This is not sufficiently conclusive evidence such that if presented, it would likely change the result on retrial. Accordingly, we find defendant failed to state the gist of an actual innocence claim.

¶ 76                                    D. Excessive Sentence

¶ 77          Finally, defendant argues the trial court erred because he stated the gist of a claim that his sentence is unconstitutionally excessive as applied to him because the trial court failed to properly consider defendant's youth and its attendant circumstances at sentencing. We disagree.

¶ 78          We first note that defendant failed to raise the issue of whether his sentence violated the proportionate penalties clause of the Illinois Constitution on direct appeal, and his claim is therefore forfeited. *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 62, 127 N.E.3d 131. In response to the State's forfeiture argument, defendant responds that "claims [under *Miller v. Alabama*, 567 U.S. 460 (2012)] can and should be raised in postconviction petitions, which [defendant] alleged in his Petition," but does not ask this court to relax the rules of forfeiture. However, even if defendant's claim were not procedurally barred, we find the claim lacks merit.

¶ 79          The proportionate penalties clause provides, in relevant part, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause if it is " 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *People v. Sharpe*, 216 Ill. 2d 481, 487, 839 N.E.2d 492, 498 (2005) (quoting *People v. Moss*, 206 Ill. 2d 503, 522, 795 N.E.2d 208, 220

(2003)). Additionally, the United States Supreme Court held in *Miller v. Alabama*, 567 U.S. at 487, that a sentencing scheme mandating life in prison without the possibility of parole for juvenile offenders, *i.e.*, under the age of 18, violates the eighth amendment of the constitution. The Illinois Supreme Court has held that *Miller* does not preclude a defendant over the age of 18 from arguing his sentence is unconstitutional as applied to him in a postconviction proceeding. See *People v. Harris*, 2018 IL 121932, ¶ 48, 120 N.E.3d 900.

¶ 80      In his brief, defendant argues that he should have the opportunity to develop the record to determine whether the protections of *Miller* can apply to him as a 20-year-old offender. It is well established, however, that although the threshold for a postconviction petition's survival at the first stage of proceedings is low, a *pro se* petitioner is not excused from providing any factual detail at all. *Hodges*, 234 Ill. 2d at 10. In his petition, defendant claims his sentence is "unconstitutional in violation of the Proportionate Penalt[ies] clause, in that it shocked the moral sense of the community," but fails to provide any facts in support of this assertion. Defendant counters in his reply brief that as a *pro se* petitioner, he "cannot be expected to understand the differences between the eighth amendment, proportionality clause, facial and as[-]applied challenges." We agree that, at the first stage of postconviction proceedings, defendant was not required to provide legal arguments and analysis. See 725 ILCS 5/122-2 (West 2016)).

¶ 81      However, defendant failed to provide any facts in his petition demonstrating why he believes his sentence is disproportionate to the nature of the offenses—*i.e.*, four counts of attempt (first degree murder)—for which he was convicted. In addressing defendant's sentencing claim, the trial court's written order does not discuss *Miller* at all because defendant's petition referenced only the proportionate penalties clause and defendant never argued that his sentence was excessive based on his youth. Defendant's bare assertion that his sentence violates the

proportionate penalties clause is insufficient to survive the first stage of postconviction proceedings.

¶ 82 Because defendant's petition failed to state the gist of any constitutional claim, the trial court did not err when it dismissed the petition as frivolous and patently without merit. In closing, we thank the trial court for its detailed written order, which aided us greatly in resolving this appeal.

¶ 83                          III. CONCLUSION

¶ 84 For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Apr. 1, 2018), we affirm the trial court's judgment.

¶ 85 Affirmed.